## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

**Case No.**

BARRY WAX, a Florida resident, KENNETH ROSEN, a Florida resident, individually, and on behalf of others similarly-situated,

Plaintiffs,

v.

FANDUEL, INC., DRAFTKINGS, INC., SAAHIL SUD, DREW DINKMEYER, ETHAN HASKELL, MATTHEW BOCCIO, VISA, INC., MASTERCARD, INC., AMERICAN EXPRESS CREDIT CORPORATION, J.P. MORGAN CHASE & CO., MERRICK BANK, CAPITAL ONE BANK, PAYSAFECARD.COM USA, INC.,VANTIV, INC., PAYPAL, INC., NATIONAL BASKETBALL ASSOCATION, INC., TURNER SPORTS, BULLPEN MANAGEMENT LLC, COMCAST VENTURES LLC, GOOGLE CAPITAL MANAGEMENT LLC, HDS INVESTMENT ADVISORY LLC, HDS INVESTMENT MANAGEMENT LLC, KOHLBERG KRAVIS ROBERTS & CO. L.P., NBC SPORTS VENTURES LLC, PENTECH VENTURES LLP, PITON CAPITAL LLP, LEK CONSULTING LLC, SCOTTISH INVESTMENT BANK, SHAMROCK CAPITAL ADVISORS LLC, TIME WARNER, INC., d/b/a TIME WARNER INVESTMENTS, TUSK VENTURES, 21ST CENTURY FOX AMERICA, INC., ATLAS VENTURES ASSOCIATES III, INC., BDS CAPITAL MANAGEMENT LLC, DST GLOBAL, a/k/a DIGITAL SKY TECHNOLOGIES, FOX SPORTS INTERACTIVE MEDIA LLC, GGV CAPITAL HOLDINGS LLC, JASON ROBINS, HUB ANGELS MANAGEMENT LLC, JORDAN

**CLASS ACTION**

MENDELL, KRAFT GROUP LLC,
LEGENDS HOSPITALITY LLC, MSG
SPORTS & ENTERTAINMENT LLC,
MAJOR LEAGUE BASEBALL
VENTURES, MAJOR LEAGUE SOCCER
LLC, MELO7 MEDIA PARTNERS LLC,
NHL ENTERPRISES, INC., NHL
ENTERPRISES LP, REDPOINT
VENTURES I LLC, THE RAINE GROUP
LLC, WELLINGTON MANAGEMENT
COMPANY LLC,

Defendants.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Barry Wax and Kenneth Rosen, individually (collectively "Class Representatives"), and on behalf of others similarly situated ("Class Members"), bring this class action for Florida residents against above-captioned Defendants, all or in part, for claims of negligence, breach of contract, unjust enrichment, declaratory and supplementary relief, injunctive relief, Civil RICO, and civil conspiracy for damages.

## JURISDICTION, PARTIES AND VENUE

### Plaintiffs

1.      At all times relevant hereto, Plaintiff Barry Wax was a resident of Miami, Miami-Dade County, Florida, and placed wagers with FanDuel via FanDuel's website, which included Terms of Use.  (See Exhibit "A").

2.      At all times relevant hereto, Plaintiff Kenneth Rosen, was a resident of Miami, Miami-Dade County, Florida, and placed wagers with Defendant DraftKings, Inc. ("DraftKings") via DraftKings' website, which included Terms of Use.  (See Exhibit "B").

### Defendants

### Online Gambling Defendants

2

3.     At all times relevant hereto, Defendant FanDuel was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located in New York City, New York and having an office in Orlando, Florida.

4.     Defendant FanDuel offers its service through its internet site throughout the nation, internationally, including the State of Florida and via its office in Florida.  FanDuel, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

5.     Defendant FanDuel is a fantasy sports website that permits individuals to play fantasy sports games. To begin playing on FanDuel, an individual is required to place a deposit and create a FanDuel account. That person can then use the money on deposit to pay entry fees to partake in daily fantasy sports games. At the end of the sports day, the winner of each fantasy contest is then awarded prize money which is inserted into their FanDuel account.

6.     At all times relevant hereto, Defendant DraftKings was and is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business located in Boston, Massachusetts.

7.     Defendant DraftKings offers its service through its internet site throughout the nation, internationally, including the State of Florida.  DraftKings, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

8.      Defendant DraftKings is a fantasy sports website that permits individuals to play fantasy sports games. To begin playing on DraftKings, an individual is required to place a deposit and create a DraftKings account. That person can then use the money on deposit to pay entry fees to partake in daily fantasy sports games. At the end of the sports day, the winner of each fantasy contest is then awarded prize money which is inserted into their DraftKings account.

9.      At all times relevant hereto, Defendants, FanDuel and DraftKings, acted by and through their employees, agents, and representatives who were all working within the scope of their employment, agency, and representative capacity with Defendants and working in furtherance of Defendants' interests.

10.      Defendants FanDuel and DraftKings shall also be known as the "Online Gambling Defendants" throughout the Complaint.

## Apex Predator or Shark Bettor Defendants

11.      At all times relevant hereto, Defendant Saahil Sud was and is a Massachusetts resident, residing at 120 Kingston Street, Penthouse 2402, Boston, Massachusetts.

12.      Upon information and belief, Mr. Sud is an Apex predator or Shark bettor in Defendants FanDuel and DraftKings' fantasy sports games, as described herein.

13.      Defendant Sud's activities, as alleged herein, reached residents of the State of Florida, including Plaintiffs. Sud, directly and through Defendant FanDuel and DraftKings engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  Sud is subject to personal jurisdiction in the state of Florida because he regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

14.     At all times relevant hereto, Defendant Drew Dinkmeyer was and is a Florida resident, residing at 709 SE 6th Court, Fort Lauderdale, 709 SE 6th Court, Fort Lauderdale, 33301.

15.     Defendant Dinkmeyer's activities, as alleged herein, reached residents of the State of Florida, including Plaintiffs. Dinkmeyer, directly and through Defendant FanDuel and DraftKings engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  Dinkmeyer is subject to personal jurisdiction in the state of Florida because he regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

16.     Upon information and belief, Mr. Dinkmeyer is an Apex predator or Shark bettor in Defendants FanDuel and DraftKings' fantasy sports games, as described herein.

### Online Gambling Defendants' Employee Defendants

17.     At all times relevant hereto, Defendant Ethan Haskell was and is a Massachusetts resident residing at 709 SE 6th Court, Ft. Lauderdale, FL 33301. Upon information and belief, Mr. Haskell is an employee of DraftKings that used insider information to wager on fantasy sports on Defendants DraftKings and FanDuel's websites.

18.     Defendant Haskell's activities, as alleged herein, reached residents of the State of Florida, including Plaintiffs. Haskell, directly and through Defendant FanDuel and DraftKings engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  Haskell is subject to personal jurisdiction in the state of Florida because he regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

19.     At all times relevant hereto, Defendant Matthew Boccio was and is a New York resident residing at 24 Kenworth Road, Port Washington, New York. Upon information and belief, Mr. Boccio is an employee of FanDuel that used insider information to wager on fantasy sports on Defendants DraftKings and FanDuel's websites.

20.     Defendant Boccio's activities, as alleged herein, reached residents of the State of Florida, including Plaintiffs. Boccio, directly and through Defendant FanDuel and DraftKings engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  Boccio is subject to personal jurisdiction in the state of Florida because he regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

**Facilitator Defendants**

21.     Defendant VISA, INC. ("VISA") is a Delaware corporation headquartered in California.  VISA is a citizen of the States of Delaware and California.  VISA is a financial services provider authorized to conduct business and does conduct business throughout the State of Florida.  VISA receives a fee from the Bank Defendants for facilitating the transfer of the monies that the Bank Defendants lend to persons that such persons use for illegal gambling with DraftKings and FanDuel.

22.     Defendant VISA offers its service throughout the nation, internationally, including the State of Florida.  VISA, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

23.     Defendant MASTERCARD, INC. ("MASTERCARD") is a Delaware Corporation headquartered in Purchase, New York.  MASTERCARD is a citizen of the States of Delaware and New York.  MASTERCARD is financial services provider authorized to conduct business and does conduct business throughout the State of Florida.  MASTERCARD receives a fee from the Bank Defendants for facilitating the transfer of the monies that the Bank Defendants lend to persons that such persons use for illegal gambling with DraftKings andFanDuel.

24.     Defendant MASTERCARD offers its service throughout the nation, internationally, including the State of Florida.  MASTERCARD, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

25.     Defendant AMERICAN EXPRESS CREDIT CORPORATION ("AMEX") is a Delaware Corporation headquartered in New York, New York.  AMEX is a citizen of the States of Delaware and New York.  AMEX is financial services provider authorized to conduct business and does conduct business throughout the State of Florida.  AMEX receives a fee from the Bank Defendants for facilitating the transfer of the monies that the Bank Defendants lend to persons that such persons use for illegal gambling with DraftKings and FanDuel.

26.     Defendant AMEX offers its service throughout the nation, internationally, including the State of Florida.  AMEX, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

27.     VISA, MASTERCARD and AMEX will also be referred to as the "Facilitator Defendants" throughout the Complaint.

28.     At all times relevant hereto, the Facilitator Defendants acted by and through their employees, agents, and representatives who were all working within the scope of their employment, agency, and representative capacity with Defendants and working in furtherance of Defendants' interests.

## Bank Defendants

29.     Defendants J.P. MORGAN CHASE & CO., MERRICK BANK CORPORATION and CAPITAL ONE BANK will also be referred to as the "Bank Defendants" throughout this complaint.

30.     Defendant J.P. MORGAN CHASE & CO. ("J.P. MORGAN") is a Delaware Corporation headquartered in New York.  J.P. MORGAN is a citizen of the States of Delaware and New York.  J.P. MORGAN is a bank authorized to conduct business and does conduct business throughout the State of Florida.  JP MORGAN issues loans for illegal gambling offered by FanDuel and DraftKings, which loans the recipients use to place bets through FanDuel and DraftKings.

31.     Defendant J.P. MORGAN offers its service throughout the nation, internationally, including the State of Florida.  J.P. MORGAN, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida. It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

32.     Defendant MERRICK BANK CORPORATION ("MERRICK") is a Delaware Corporation headquartered in Utah.  MERRICK is a citizen of the States of Delaware and Utah. MERRICK is a bank authorized to conduct business and does conduct business throughout the

State of Florida.    MERRICK issues loans for illegal gambling offered by FanDuel and DraftKings, which loans the recipients use to place bets through FanDuel and DraftKings.

33.    Defendant MERRICK offers its service throughout the nation, internationally, including the State of Florida.    MERRICK, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida. It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein and in the state of Florida.

34.    Defendant CAPITAL ONE BANK ("CAPITAL ONE") is a Delaware Corporation headquartered in Virginia.    CAPITAL ONE is a citizen of the States of Delaware and Virginia.    CAPITAL ONE is a bank authorized to conduct business and does conduct business throughout the State of Florida.    CAPITAL ONE issues loans for illegal gambling offered by FanDuel and DraftKings, which loans the recipients use to place bets through FanDuel and DraftKings.

35.    Defendant CAPITAL ONE offers its service throughout the nation, internationally, including the State of Florida.    CAPITAL ONE directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.    It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein and in the state of Florida.

36.    At all times relevant hereto, the Bank Defendants acted by and through their employees, agents, and representatives who were all working within the scope of their employment, agency, and representative capacity with Defendants and working in furtherance of Defendants' interests.

37.     The Bank Defendants lent monies and/or credit to Plaintiff for the bets and/or wagers that Plaintiff placed with FanDuel and DraftKings.

38.     Plaintiff used the credit that the Bank Defendants provided to Plaintiff to wager on illegal sports betting schemes created, and/or owned, and/or operated by FanDuel and by DraftKings.

39.     FanDuel and DraftKings operate illegal online sports betting businesses that accept wagers from persons across the nation, except from persons in those states where the states' regulatory authorities have prohibited them from doing so.

40.     The Bank Defendants are in the business of loaning money that was and continues to be used by their recipients, such as Plaintiff, for placing bets through the illegal gambling schemes created and operated by FanDuel and DraftKings.

41.     The Bank Defendants issued Plaintiff loans for illegal gambling offered by FanDuel and DraftKings, which loans Plaintiff did use for such purpose.  The Facilitator Defendants received a fee from the Bank Defendants for facilitating the transfer of the money that the Bank Defendants lent to Plaintiff and that Plaintiff used for illegal gambling with DraftKings and FanDuel.

42.     The Bank Defendants have collected and continue to collect debts on the credit that the Bank Defendants lent Plaintiff and others similarly situated that Plaintiff and others used in connection with the illegal online DFS gambling platforms operated by FanDuel and DraftKings.

### Payment Processor Defendants

43.     Defendant PAYSAFECARD.COM USA, INC. ("PAYSAFE") is a Delaware corporation headquartered in New York. PAYSAFE is a citizen of the States of Delaware and New York.  PAYSAFE is a merchant processor authorized to conduct business and does conduct

business throughout the States of Florida. PAYSAFE serves a "player banking function" receiving a fee as the financial intermediary between FanDuel and DraftKings and its customers.

44.     Defendant PAYSAFE offers its service throughout the nation, internationally, including the State of Florida. PAYSAFE directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida. It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

45.     Defendant VANTIV INC., ("VANTIV") is a Delaware corporation headquartered in Ohio. VANTIV is a citizen of the States of Delaware and Ohio. VANTIV is a merchant processor authorized to conduct business and does conduct business throughout the State of Florida. VANTIV serves a "player banking function" receiving a fee as the financial intermediary between FanDuel and DraftKings and its customers.

46.     Defendant VANTIV offers its service throughout the nation, internationally, including the State of Florida. VANTIV directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida. It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

47.     Upon information and belief, Defendant PAYPAL, INC., ("PAYPAL") is a California Corporation headquartered in Ohio. PAYPAL is a citizen of the State of California. PAYPAL is a merchant processor authorized to conduct business and does conduct business throughout the State of Florida. PAYPAL serves a "player banking function" receiving a fee as the financial intermediary between FanDuel and DraftKings and its customers.

48.     Defendant PAYPAL offers its service throughout the nation, internationally, including the State of Florida.  PAYPAL directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

49.     Defendants PAYSAFE, VANTIV and PAYPAL shall also be known as the "Payment Processor Defendants."

50.     At all times relevant hereto, the Payment Processor Defendants acted by and through their employees, agents, and representatives who were all working within the scope of their employment, agency, and representative capacity with Defendants and working in furtherance of Defendants' interests.

51.     The Payment Processor Defendants serve a "player banking function," receiving a fee as the financial intermediary between FanDuel and DraftKings and its customers.

### FanDuel Investor Defendants

52.     Upon information and belief, Defendant NATIONAL BASKETBALL ASSOCIATION, INC. is a New York corporation headquartered in New York. NATIONAL BASKETBALL ASSOCIATION, INC. is a citizen of the state of New York. NATIONAL BASKETBALL ASSOCIATION, INC. is an investor in Defendant FanDuel's illegal internet gambling enterprise.

53.     Defendant NATIONAL BASKETBALL ASSOCIATION, INC.  offers its service and sells its entertainment product throughout the nation, internationally, including the State of Florida. NATIONAL BASKETBALL ASSOCIATION, INC.  directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state

of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

54.     Upon information and belief, Defendant TURNER SPORTS, a division of Turner Broadcasting System is a Georgia corporation headquartered in Georgia. TURNER SPORTS is a citizen of the state of Georgia. TURNER SPORTS is an investor in Defendant FanDuel's illegal internet gambling enterprise.

55.     Defendant TURNER SPORTS offers its service and sells its entertainment product throughout the nation, internationally, including the State of Florida. TURNER SPORTS directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

56.     Upon information and belief, Defendant BULLPEN MANAGEMENT LLC is a California corporation headquartered in California. BULLPEN MANAGEMENT LLC is a citizen of the state of California. BULLPEN CAPITAL is an investor in Defendant FanDuel's illegal internet gambling enterprise.

57.     Defendant BULLPEN MANAGEMENT LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida.  BULLPEN MANAGEMENT LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

58.    Upon information and belief, Defendant COMCAST VENTURES LLC, is a California Corporation headquartered in California. COMCAST VENTURES LLC is a citizen of the state of California and has offices in California, Pennsylvania and New York. COMCAST VENTURES LLC is an investor in Defendant FanDuel's illegal internet gambling enterprise.

59.    Defendant COMCAST VENTURES LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. COMCAST VENTURES LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

60.    Upon information and belief, Defendant GOOGLE CAPITAL MANAGEMENT LLC, is a California Corporation headquartered in California. GOOGLE CAPITAL MANAGEMENT LLC is a citizen of the state of California. GOOGLE CAPITAL MANAGEMENT LLC is an investor in Defendant FanDuel's illegal internet gambling enterprise.

61.    Defendant GOOGLE CAPITAL MANAGEMENT LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. GOOGLE CAPITAL MANAGEMENT LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

62.    Upon information and belief, Defendants HDS INVESTMENT ADVISORY LLC and HDS INVESTMENT MANAGEMENT LLC are New York Corporations headquartered in

New York. HDS INVESTMENT ADVISORY LLC, HDS INVESTMENT MANAGEMENT LLC and HDS CAPITAL are citizens of the state of New York. HDS INVESTMENT ADVISORY LLC and HDS INVESTMENT MANAGEMENT LLC are investors in Defendant FanDuel's illegal internet gambling enterprise.

63.     Defendants HDS INVESTMENT ADVISORY LLC and HDS INVESTMENT MANAGEMENT LLC offer their services and solicit investors throughout the nation, internationally, including the State of Florida. HDS INVESTMENT ADVISORY LLC and HDS INVESTMENT MANAGEMENT LLC directly and through their agents, engage in substantial, continuous, systematic, and non-isolated business activity within the state of Florida. HDS INVESTMENT ADVISORY LLC, HDS INVESTMENT MANAGEMENT LLC are subject to personal jurisdiction in the state of Florida because they regularly conduct business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida. HDS INVESTMENT ADVISORY LLC and HDS INVESTMENT MANAGEMENT LLC are related entities.

64.     Upon information and belief, Defendant KOHLBERG KRAVIS ROBERTS & CO. L.P., is a New York Limited Partnership headquartered in New York with offices in California and Washington, D.C. KOHLBERG KRAVIS ROBERTS & CO. L.P. is a citizen of the state of New York. KOHLBERG KRAVIS ROBERTS & CO. L.P. is an investor in Defendant FanDuel's illegal internet gambling enterprise.

65.     Defendant KOHLBERG KRAVIS ROBERTS & CO. L.P. offers its service and solicits investors throughout the nation, internationally, including the State of Florida. KOHLBERG KRAVIS ROBERTS & CO. L.P. directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.

15

It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

66.     Upon information and belief, Defendant NBC SPORTS VENTURES, LLC is A New York limited liability company. NBC SPORTS VENTURES LLC is a citizen of the state of New York. NBC SPORTS VENTURES LLC is an investor in Defendant FanDuel's illegal internet gambling enterprise.

67.     Defendant NBC SPORTS VENTURES LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. NBC SPORTS VENTURES LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

68.     Upon information and belief, Defendant PENTECH VENTURES LLP is headquartered in London, England. PENTECH VENTURES LLP is a citizen of the United Kingdom. PENTECH VENTURES LLP is an investor in Defendant FanDuel's illegal internet gambling enterprise.

69.     Defendant PENTECH VENTURES LLP offers its service and solicits investors throughout the nation, internationally, including the State of Florida. PENTECH VENTURES LLP directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

70.     Upon information and belief, Defendant PITON CAPITAL LLP is headquartered in London, England. PITON CAPITAL LLP is a citizen of the United Kingdom. PITON CAPITAL LLP is an investor in Defendant FanDuel's illegal internet gambling enterprise.

71.     Defendant PITON CAPITAL LLP offers its service and solicits investors throughout the nation, internationally, including the State of Florida. PITON CAPITAL LLP directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

72.     Upon information and belief, Defendant LEK CONSULTING LLC is headquartered in London, England. LEK CONSULTING LLC is a citizen of the United Kingdom. LEK CONSULTING LLC is an investor in Defendant FanDuel's illegal internet gambling enterprise.

73.     Defendant LEK CONSULTING LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. LEK CONSULTING LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

74.     Upon information and belief, Defendant SCOTTISH INVESTMENT BANK, is Scottish corporation, headquartered in Scotland. SCOTTISH INVESTMENT BANK, is a citizen of Scotland.  SCOTTISH INVESTMENT BANK, is an investor in Defendant FanDuel's illegal internet gambling enterprise.

75.     Defendant SCOTTISH INVESTMENT BANK offers its service and solicits investors throughout the nation internationally, including the State of Florida. SCOTTISH INVESTMENT BANK has offices in Massachusetts, Illinois, Texas and New York. SCOTTISH INVESTMENT BANK directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

76.     Upon information and belief, Defendant SHAMROCK CAPITAL ADVISORS LLC is a California Limited Liability Corporation headquartered in Los Angeles, California. SHAMROCK CAPITAL ADVISORS, is a citizen of the state of California. SHAMROCK CAPITAL ADVISORS LLC is an investor in Defendant FanDuel's illegal internet gambling enterprise.

77.     Defendant SHAMROCK CAPITAL ADVISORS LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. SHAMROCK CAPITAL ADVISORS LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida. It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

78.     Upon information and belief, Defendant TIME WARNER, INC., doing business as TIME WARNER  INVESTMENTS is a New York Corporation headquartered in New York. TIME WARNER INVESTMENTS, is a citizen of the state of New York. TIME WARNER, INC. is an investor in Defendant FanDuel's illegal internet gambling enterprise.

79.     Defendant TIME WARNER, INC., offers its service and solicits investors throughout the nation, internationally, including the State of Florida. TIME WARNER, INC., directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

80.     Upon information and belief, Defendant TUSK VENTURES, is a Pennsylvania Corporation headquartered in New York. TUSK VENTURES, is a citizen of the state of New York. TUSK VENTURES, is an investor in Defendant FanDuel's illegal internet gambling enterprise.

81.     Defendant TUSK VENTURES offers its service and solicits investors throughout the nation, internationally, including the State of Florida. TUSK VENTURES directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

82.     At all times relevant hereto, the FanDuel Investor Defendants acted by and through their employees, agents, and representatives who were all working within the scope of their employment, agency, and representative capacity with Defendants and working in furtherance of Defendants' interests.

**DraftKings Investor Defendants**

83.     Upon information and belief, Defendant 21ST CENTURY FOX AMERICA, INC., is a New York corporation headquartered in the state of New York. 21ST CENTURY FOX

AMERICA, INC. is a citizen of the state of New York. 21ST CENTURY FOX AMERICA, INC. is an investor in Defendant DraftKings' illegal internet gambling enterprise.

84.     Defendant 21ST CENTURY FOX AMERICA, INC. offers its service and solicits investors throughout the nation, internationally, including the State of Florida. 21ST CENTURY FOX AMERICA, INC. directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

85.     Upon information and belief, Defendant ATLAS VENTURES ASSOCIATES III, INC., is a Massachusetts corporation headquartered in Massachusetts. ATLAS VENTURES III, INC. is a citizen of the state of Massachusetts. ATLAS VENTURES III, INC., is an investor in Defendant DraftKings' illegal internet gambling enterprise..

86.     Defendant ATLAS VENTURES ASSOCIATES III, INC. offers its service and solicits investors throughout the nation, internationally, including the State of Florida. ATLAS VENTURES ASSOCIATES III, INC. directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

87.     Upon information and belief, Defendant BDS CAPITAL MANAGEMENT LLC, is a New York Corporation headquartered in New York. BDS CAPITAL MANAGEMENT LLC is a citizen of the state of New York. BDS CAPITAL MANAGEMENT LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise..

88.     Defendant BDS CAPITAL MANAGEMENT LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. BDS CAPITAL MANAGEMENT LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

89.     Upon information and belief, Defendant DST GLOBAL, also known as DIGITAL SKY TECHNOLOGIES is a Russian corporation, headquartered in Russia. DST GLOBAL is a citizen of Russia. DST GLOBAL is an investor in Defendant DraftKings' illegal internet gambling enterprise.

90.     Defendant DST GLOBE offers its service and solicits investors throughout the nation, internationally, including the State of Florida. DST GLOBE directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

91.     Defendant FOX SPORTS INTERACTIVE MEDIA LLC, is a California Corporation headquartered in California. FOX SPORTS, is a citizen of the state of California. FOX SPORTS INTERACTIVE MEDIA LLC, is an investor in Defendant DraftKings' illegal internet gambling enterprise.

92.     Defendant FOX SPORTS INTERACTIVE MEDIA LLC offers its service, sells its entertainment product and solicits investors throughout the nation, internationally, including the State of Florida. FOX SPORTS INTERACTIVE MEDIA LLC directly and through its

agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

93.     Defendant GGV CAPITAL HOLDINGS LLC is a California Corporation headquartered in California. GGV CAPITAL HOLDINGS LLC, is a citizen of the state of California. GGV CAPITAL HOLDINGS LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise.

94.     Defendant GGV CAPITAL HOLDINGS LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. GGV CAPITAL HOLDINGS LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

95.     Defendant JASON ROBINS is a resident of Massachusetts. JASON ROBINS is an investor in Defendant DraftKings' illegal internet gambling enterprise.

96.     Defendant JASON ROBINS directly and through his agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida. It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

97.     Defendant HUB ANGELS MANAGEMENT LLC, is a Massachusetts limited liability company headquartered in Massachusetts. HUB ANGELS MANAGEMENT LLC is a

citizen of the state of Massachusetts. HUB ANGELS MANAGEMENT LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise.

98.    Defendant HUB ANGELS MANAGEMENT LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. HUB ANGELS MANAGEMENT LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

99.    Defendant JORDAN MENDELL is a resident of Massachusetts. JORDAN MENDELL is an investor in Defendant DraftKings' illegal internet gambling enterprise.

100.    Defendant JORDAN MENDELL directly and through his agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida. It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

101.    Defendant KRAFT GROUP LLC is a Massachusetts Corporation headquartered in Massachusetts. KRAFT GROUP LLC is a citizen of the state of Massachusetts. KRAFT GROUP LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise.

102.    Defendant KRAFT GROUP LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. KRAFT GROUP LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

103.    Defendant LEGENDS HOSPITALITY LLC is a New York Corporation headquartered in New York. LEGENDS HOSPITALITY LLC is a citizen of the state of New York. LEGENDS HOSPITALITY LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise.

104.    Defendant LEGENDS HOSPITALITY LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. LEGENDS HOSPITALITY LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

105.    Defendant MSG SPORTS & ENTERTAINMENT LLC is a New York Corporation headquartered in New York. MSG SPORTS & ENTERTAINMENT LLC is a citizen of the state of New York. MSG SPORTS & ENTERTAINMENT LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise.

106.    Defendant MSG SPORTS & ENTERTAINMENT LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. MSG SPORTS & ENTERTAINMENT LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

107.    Defendant MAJOR LEAGUE BASEBALL VENTURES, is a New York Corporation headquartered in New York. MAJOR LEAGUE BASEBALL VENTURES, is a

citizen of the state of New York. MAJOR LEAGUE BASEBALL VENTURES, is an investor in Defendant DraftKings' illegal internet gambling enterprise.

108.    Defendant MAJOR LEAGUE BASEBALL VENTURES, offers its service, sells its entertainment product and solicits investors throughout the nation, internationally, including the State of Florida. MAJOR LEAGUE BASEBALL VENTURES, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

109.    Defendant MAJOR LEAGUE SOCCER LLC, is a New York Limited Liability Company headquartered in New York. MAJOR LEAGUE SOCCER LLC is a citizen of the state of New York. MAJOR LEAGUE SOCCER LLC, is an investor in Defendant DraftKings' illegal internet gambling enterprise.

110.    Defendant MAJOR LEAGUE SOCCER LLC,, offers its service, sells its entertainment product and solicits investors throughout the nation, internationally, including the State of Florida. MAJOR LEAGUE SOCCER LLC,, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida. It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

111.    Defendant MELO7 MEDIA PARTNERS LLC is a Delaware Corporation headquartered in Delaware. MELO7 MEDIA PARTNERS LLC is a citizen of the state of Delaware. MELO7 MEDIA PARTNERS LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise.

112.    Defendant MELO7 MEDIA PARTNERS LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. MELO7 MEDIA PARTNERS LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

113.    Defendants NHL ENTERPRISES, INC. and NHL ENTERPRISES LP are New York entities and headquartered in New York. Defendants NHL ENTERPRISES, INC. and NHL ENTERPRISES LP are citizens of the state of New York. Defendants NHL ENTERPRISES, INC. and NHL ENTERPRISES LP are investors in Defendant DraftKings' illegal internet gambling enterprise.

114.    Defendants NHL ENTERPRISES, INC. and NHL ENTERPRISES LP, offer their service, sells their entertainment product and solicits investors throughout the nation, internationally, including the State of Florida. Defendants NHL ENTERPRISES, INC. and NHL ENTERPRISES LP, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

115.    Defendant REDPOINT VENTURES I LLC, is a California Corporation headquartered in California. REDPOINT VENTURES I LLC, is a citizen of the state of California. REDPOINT VENTURES I LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise.

116.    Defendant REDPOINT VENTURES I LLC, offers its service and solicits investors throughout the nation, internationally, including the State of Florida. REDPOINT VENTURES I LLC, directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

117.    Defendant THE RAINE GROUP LLC is a New York Corporation headquartered in New York. THE RAINE GROUP is a citizen of the state of New York. THE RAINE GROUP LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise.

118.    Defendant THE RAINE GROUP LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. THE RAINE GROUP LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.  It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

119.    Defendant WELLINGTON MANAGEMENT COMPANY LLC is a Massachusetts Corporation headquartered in Massachusetts. WELLINGTON MANAGEMENT COMPANY LLC is a citizen of the state of California. WELLINGTON MANAGEMENT COMPANY LLC is an investor in Defendant DraftKings' illegal internet gambling enterprise.

120.    Defendant WELLINGTON MANAGEMENT COMPANY LLC offers its service and solicits investors throughout the nation, internationally, including the State of Florida. WELLINGTON MANAGEMENT COMPANY LLC directly and through its agents, engages in substantial, continuous, systematic, and non-isolated business activity within the state of Florida.

It is subject to personal jurisdiction in the state of Florida because it regularly conducts business in the state of Florida and committed the unlawful acts alleged herein in the state of Florida.

121.    At all times relevant hereto, the DraftKings Investor Defendants acted by and through their employees, agents, and representatives who were all working within the scope of their employment, agency, and representative capacity with Defendants and working in furtherance of Defendants' interests.

## Venue & Jurisdiction

122.    All conditions precedent to the bringing of this action have occurred, have been waived or have been otherwise satisfied.

123.    The amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

124.    The putative classes consist of a thousand or more people.

125.    Plaintiffs are residents of Florida, and at least one Defendant is not a citizen of the State of Florida.  Accordingly, minimal diversity exits between the parties because at least one member of the class is diverse from at least one defendant.  There are at least 100 members of the proposed class and the amount in controversy exceeds $5,000,000 to a reasonable probability. Therefore, CAFA jurisdiction properly lies with this Court.

126.   This Court also has original jurisdiction over this action pursuant to 28 U.S.C. §1331 because one of Plaintiff's civil claims arises under the Constitution, laws or treaties of the United States, specifically, violation of 18 U.S.C. § 1962.

127.    This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367 because the state law claims are so closely related to the claims in which the Court has original jurisdiction that they form part of the same case or controversy.

128.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1332(d) and 1337.

129.    Venue is proper within this District because a substantial part of the events giving rise to the claims occurred and continue to occur in this District.

**Background of Fantasy Sports**

130.    To begin playing on DraftKings or FanDuel, an individual is required to place a deposit and create an account. That deposit can then be used to pay entry fees to partake in daily fantasy sports games.  At the end of the sports day, the winner of each fantasy contest is then awarded prize money which is inserted into their DraftKings account.

131.    To create an account with DraftKings or FanDuel, a user must agree to Terms and Conditions in a multi-page internet User Agreement ("User Agreement").  The User Agreement is unconscionable, contrary to public policy, unmanageable and is intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

132.    Congress has deemed fantasy sports a game of skill, not of chance. See 31 U.S.C. §§ 5361-5367. Defendants have attempted to take advantage of 31 U.S.C. §§ 5361-5367 to legitimize fantasy sports.

133.    Daily fantasy sports have recently grown into an industry projected to receive approximately $31 billion in player entry fees by the year 2020.

134.    In the first week of the 2015 NFL season alone, FanDuel and DraftKings were expected to receive a combined $60 million in entry fees.

135.    The competitions vary by sport and format, but the most popular forum is daily or weekly fantasy football. In a typical competition, customers "buy-in"—anywhere from $1 to thousands of dollars—against other participants with hopes that they will field the best fantasy

football "team." The basic format for fantasy sports is best typified by a typical bet on a NFL game.

136.    The user pays an entry fee that varies in amount.

137.    One example of a game that users may play provides a user a budget to spend on players that are competing in games that week in the NFL.  The budget is an artificial number, $60,000 for example.  NFL players are assigned a salary by Defendants DraftKings or FanDuel. Users, bound by a fictitious salary cap, select a roster of players they believe will perform well in terms of individual statistics. The user selects their team by player positions based on the salaries assigned by DraftKings or FanDuel, not to exceed the salary cap and budget.

138.    At a time certain before the NFL games begin, no further entries are allowed and a user sets their roster. The NFL players each earn points for the user based upon their performance in the games. The user with the highest total of points in relation to other users in that game wins.

139.    Defendants generate their revenue by hosting competitions among individual users and, for their services, take a "rake" of the earnings.

140.    Though the rake varies by game type and amount, it normally hovers around 10 percent. In a typical competition wherein 10 players bet $10 each in a winner-takes-all format, the champion will walk away with $90 of the $100, with Defendants, FanDuel and DraftKings, taking its 10 percent rake of $10.

141.    The amount of the prize in a fantasy sports game is set in advance of the game even though the number of users who will enter the game is unknown.  An "overlay" occurs when the amount of the prize exceeds the amount of money received by DraftKings or FanDuel from the buy-ins, or entry fees, for that game, DraftKings and FanDuel have intentionally

allowed Apex predators to flood their games, because the money received from increased entries, or buy-ins, paid by Apex predators provides coverage to DraftKings and FanDuel for the overlay.  This creates a situation whereby Apex predators gain a significant statistical advantage over bona-fide users.

142.    To lure customers, Defendants, FanDuel and DraftKings websites saturate television, particularly commercials airing during sporting events, with seductive advertising. In 2014, DraftKings alone had 1,782 separate television ads.  One advertisement for Defendant DraftKings stated "DraftKings combines one-day fantasy sports with winning life-changing amounts of cash." Another tells the story of DraftKings customer Derek Bradley, a former accountant. "DraftKings one-day fantasy baseball took him from a guy with holes in his underpants," the announcer states, "to a guy with bikini models in them!" The commercial promises that if one signs up for DraftKings, the site will "double [his or her] deposit."

143.    DraftKings alone spent approximately $23.6 million on television advertisements in September 2015.

144.    Internet advertisements, on FanDuel and DraftKings' websites and elsewhere, likewise funnel significant business to their online betting interface.

## DEFENDANTS' DRAFTKINGS AND FANDUEL'S OPERATIONS ARE ILLEGAL GAMBLING, UNFAIR AND DECEPTIVE

### DraftKings and FanDuel Allow "Apex Predator" or "Shark" Bettors to Take Unfair Advantage of the Class Representatives and Class Members

145.    Defendants DraftKings and FanDuel enticed the Class Representatives and Class Members to their respective websites via advertisements promising fantastic returns and winnings on fantasy sports games.

146.    While any player may get lucky on the back of a handful of entries into Defendants DraftKings' and FanDuel's games, over time nearly all of the prize money flows to a tiny elite equipped with elaborate statistical modeling and automated tools that can manage hundreds of entries at once and identify the weakest opponents.

147.    These elite players are known in the fantasy sports gaming industry as "Apex predator" bettors or "Shark" bettors.

148.    Apex predator and Shark bettors use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over unsuspecting Class Representatives and Class Members.

149.    FanDuel allows, at its discretion, the use of "robots," "spiders," "scrapers," or "sniping software" as long as a user obtains "express written permission." Ex. A. Nonetheless, FanDuel does not disclose to other users such as the Class Representatives and Class Members if an Apex predator or Shark bettor has used "robots," "spiders," "scrapers," or "sniping software" that gives the Apex predator or Shark bettor an unfair advantage over the Class Representatives and Class Members.

150.    DraftKings acknowledges that it may permit the use of scripts on its website and to contact DraftKings if a user wants to use a script. Ex. B.  But DraftKings did not disclose to Plaintiff and Class Members that an Apex predator or Shark bettor is using a script that gives the Apex predator or Shark bettor an unfair advantage.

151.    Defendants DraftKings and FanDuel have failed to disclose to Class Representatives and Class Members that Apex predator and Shark bettors have an unfair advantage by obtaining better information from DraftKings and FanDuel – a situation that is

tantamount to insider trading because the information was not provided to Class Representatives and Class Members.

### Draft Kings and FanDuel Allow Their Employees to Make Bets with Access to Inside Information without Disclosure to the Class Representatives and Class Members

152.    Until October 6, 2015, Defendant DraftKings allowed its own employees to make bets on its own website and on FanDuel's website.

153.    Until October 6, 2015, Defendant FanDuel allowed its own employees to make bets on its own website and DraftKings' website.

154.    On October 6, 2015, the New York's Attorney General opened an inquiry as to each of the Defendants.

155.    The New York Attorney General's inquiry was opened to investigate "legal questions relating to the fairness, transparency and security of [FanDuel and DraftKings] and the reliability of representations … [the companies have] made to customers."

156.    The New York Attorney General's inquiry arose due to reports that DraftKings' employee Ethan Haskell "inadvertently" released data regarding the lineups created by DraftKings users the third week of the NFL season in late September. That same weekend, Mr. Ethan Haskell, a midlevel content manager for DraftKings won $350,000.00 at FanDuel.

157.    When the information regarding Mr. Haskell's release of information and winnings became public it was only then that Defendants DraftKings and FanDuel prohibited their employees from betting on their own and each other's websites.

158.    Defendants DraftKings and FanDuel acted in concert and released a joint press statement after Mr. Haskell's story became public. Ex. D.

159.    Defendants DraftKings and FanDuel failed to inform or disclose to Class Representatives and Class Members that employees of the respective Defendants are privy to crucial statistical information, including lineup data, insider information, that the Class Representatives and Class Members do not have access to.

160.    According to industry experts, the value of knowing beforehand which players will be used the most in the sports provides that user with knowledge that is an unfair advantage.

161.    Because of the massive number of entries with DraftKings and FanDuel's fantasy sports games, it is difficult to win a contest with a lot of players that are commonly owned. Rostering some players with low ownership percentages and a high upside is a strategy that many players employ. If given information before a fantasy sports game starts on DraftKings or FanDuel as to what players are being used most in a particular game, that information is unfairly advantageous to the person receiving the information and constitutes an unfair advantage especially to an unknowing Class Representative and Class Member.

162.    The information that Defendants DraftKings and FanDuel's employees have is unfairly advantageous to those DraftKings and FanDuel employees that bet on their own websites and each other's websites.

**<u>Defendant FanDuel and DraftKings' User Agreements Are Void, Unconscionable, Illusory and Unenforceable Against Class Representatives and Class Members</u>**

163.    The multi-page internet User Agreements at Exhibits A and B are void and of no effect, procedurally and substantively unconscionable, contrary to public policy, unmanageable and is intended to hide material terms such as arbitration, venue, application of foreign law, class action limitation, and as such, its terms are unenforceable against Plaintiffs and Class Members. Further, the arbitration, venue, application of foreign law, class action limitation provisions place an unreasonable economic and procedural burden on Plaintiffs and Class Members making said

User Agreements unenforceable as a matter of law. Furthermore Defendants FanDuel and DraftKings violated 31 U.S.C. §§ 5361-5367 and the laws of all 50 states prohibiting internet gambling as a result of the activities set forth herein rendering the User Agreements they entered into with Plaintiffs and Class Members void or voidable because Defendants FanDuel and DraftKings attempt to have Plaintiffs and Class Members contract with them to commit illegal acts.

164.    Plaintiff and the class were induced into placing wagers into what was supposed to be a fair game of skill without the potential for insiders to use non-public information to compete against them.

165.    Defendants FanDuel and DraftKings' User Agreements are void and of no effect under Florida law. Florida Statutes section 849.26 provides as follows:

> All promises, agreements, notes, bills, bonds or other contracts, mortgages or other securities, when the whole or part of the consideration if for money or other valuable thing won or lost, laid, staked, betted or wagered in any gambling transaction whatsoever, regardless of its name or nature, whether heretofore prohibited or not, or for the repayment of money lent or advanced at the time of a gambling transaction for the purpose of being laid, betted, staked or wagered, are void and of no effect; provided, that this act shall not apply to wagering on pari-mutuels or any gambling transaction expressly authorized by law.

(Emphasis supplied).

166.    As set forth herein, FanDuel and DraftKings' activities are not expressly authorized by law and are, in fact, illegal.

167.    Additionally, because the contracts are void and of no effect under Florida Statutes section 849.26, Defendants FanDuel and DraftKings' User Agreements' arbitration provisions, jury trial waivers, venue clauses and class action waivers void and of no effect.

168.    Moreover, the pari-mutuel exception to Florida Statutes section 849.26 does not apply to this matter.

### FanDuel and DraftKings' Activities are Illegal Gambling Under Florida Law

169.    Defendants FanDuel and DraftKings have taken the position that they were legally operating a "game of skill," not of chance. See 31 U.S.C. §§ 5361-5367.  Nevertheless, the Defendants FanDuel and DraftKings have been operating an illegal gambling enterprise.

170.    As set forth herein, Defendant FanDuel and DraftKings engage in illegal gambling activities in violation for Florida Statutes section 849.14, which provides as follows:

> **Unlawful to bet on result of trial or contest of skill, etc[1].—** Whoever stakes, bets or wagers any money or other thing of value upon the result of any trial or contest of skill, speed or power or endurance of human or beast, or whoever receives in any manner whatsoever any money or other thing of value staked, bet or wagered, or offered for the purpose of being staked, bet or wagered, by or for any other person upon any such result, or whoever knowingly becomes the custodian or depositary of any money or other thing of value so staked, bet, or wagered upon any such result, or whoever aids, or assists, or abets in any manner in any of such acts all of which are hereby forbidden, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

171.    FanDuel and DraftKings' gambling schemes are bets or wagers of money based upon the result of "any trial or contest of skill, speed or power of human or beast," to wit, the participants in the various sporting events that are the subject of the fantasy games.

172.    Moreover, FanDuel and DraftKings receives money for the bet or wager for the purpose of betting and is a custodian or depositary of the money bet or wagered on the results of the fantasy games.

---

[1] Emphasis in original.

173.     As far back as 1991, Florida's then Attorney General, Robert A. Butterworth opined in an Advisory Legal Opinion that fantasy sports gaming, structured like FanDuel and DraftKings' activities constituted illegal gambling under Florida law. Ex. C, attached hereto.

## FanDuel and DraftKings' Operations Are Not Exempt From the Unlawful Internet Gambling Enforcement Act of 2006

174.     FanDuel and DraftKings represent that their DFS schemes were rendered legal by the Unlawful Internet Gambling Enforcement Act of 2006 ("UIGEA"). However, the UIGEA does not render any form of gambling legal.

175.     The UIGEA established that lending money for illegal internet gambling is criminal.  The UIGEA established exemptions from criminal liability for loans made for some securities, commodities and insurance transactions.

176.     The UIGEA also exempted contests that did not charge a fee to participate and fantasy sports that met several criteria, including a requirement that the value of the prize is not determined by the number of participants or the amount of any fees paid by those participants.

177.     The value of the "prize" awarded by FanDuel and DraftKings for their DFS schemes is correlated to both the number of participants and the amount of fees paid by the participants. Therefore, FanDuel and DraftKings DFS schemes violate both restrictions set forth in the UIGEA exemption.

178.     Defendants cannot rely upon FanDuel and DraftKings' representation that the UIGEA rendered their DFS scheme legal because the schemes' payouts are so obviously correlated with the amount of fees paid by the participants, to wit: neither FanDuel or DraftKings would be able to profit from their DFS schemes is the payouts were greater than the total value of entrance fees.

## Bank Defendants Loaned Money For Illegal Gambling

179.    The Facilitator Defendants offer their credit processing service for online transactions between their customers and entities they conduct business with, including DFS websites.

180.    The Bank Defendants loan money to the bettors that wager on the DFS schemes created by FanDuel and DraftKings.

181.    Specifically, a cardholder wishing to place a bet with FanDuel or DraftKings will input the credit card information on the respective merchant's website.

182.    FanDuel and DraftKings then transmit the transaction information to Bank Defendants.  Bank Defendants record the request and then forward it to the appropriate network.

183.    The network then records the request and forwards it to Processor Defendants.

184.    The Facilitator Defendants then record the request and verify that there are sufficient funds in the credit line or on deposit to cover the payment amount.  If there are sufficient funds, Facilitator Defendants generate and transmit an authorization response, which transmits backwards through the same entities that processed the authorization request.

185.    FanDuel and DraftKings will then transmit a settlement request for the approved authorization request.

186.     FanDuel and DraftKings will then receive the "merchant discount," the difference between the full payment amount and the accumulation of various fees that each of the parties in the payment processing chain assess for their services.

187.    Thus, Defendants profit from, among other things, the transaction fees assessed to all individuals who use their financial services for illegal gambling offered by DraftKings and FanDuel.

188.    Plaintiffs and members of the class regularly use Defendants' services to finance their bets placed with FanDuel and DraftKings.

189.    Subsequently, Defendants attempt to collect the debt from Plaintiff and members of the class. The attempt to collect constituted a participation in the transfer of funds for illegal gambling services such as DraftKings and FanDuel.

190.    Bank Defendants cannot collect debts made for illegal gambling, including debts incurred by Plaintiff and the proposed members of the class.

**The Bank Defendants Knew or Should Have Known That They Were Loaning Money For Illegal Gambling**

191.    Bank Defendants issued or processed loans for individuals that placed wagers with FanDuel and DraftKings.

192.    Bank Defendants knew, or should have known, that the loans made to participants in FanDuel and DraftKings' activities were for illegal gambling and in violation of the UIGEA, federal, Florida State law.

193.    Significantly, the burden is on the payment provider to prohibit restricted transactions or risk civil or criminal punishment.

194.    FanDuel and DraftKings are operating their sports gambling businesses openly and did not attempt to conceal their gambling scheme.

195.    Bank Defendants continue to lend money (or process loans) to bettors that place bets with FanDuel and DraftKings even after FanDuel and DraftKings DFS schemes were known to constitute illegal gambling pursuant to the Florida Attorney General's longstanding opinion. Ex. C, attached hereto.

196.    Bank Defendants' participation in lending money for illegal DFS schemes (and subsequent profit) is illegal pursuant to 18 U.S.C. § 1962 which makes it unlawful for an entity to receive profits in connection with the enforcement of an unlawful debt.

197.    As a result of accepting payments for illegal gambling debts, the Bank Defendants have been unjustly enriched.

## CLASS ACTION ALLEGATIONS

### Plaintiffs' Classes and Subclasses

198.    Under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, Plaintiffs bring this action on behalf of themselves and several Classes initially defined as follows:

> "FanDuel Class":   All Florida residents who participated in a FanDuel fantasy sports game and paid a fee or made a wager or bet with FanDuel from February 1, 2012 through October 6, 2015.

> "DraftKings Class":   All Florida residents who participated in a DraftKings fantasy sports game and paid a fee or made a wager or bet with DraftKings from February 1, 2012 through October 6, 2015.

> "The Saahil Sud Defendant Class":   All individuals and entities who made a wager or bet against a Florida resident with DraftKings or FanDuel and made a wager or bet with FanDuel or DraftKings that were in the top 1.5% of winners on DraftKings and/or FanDuel at any point in time from February 1, 2012 through October 6, 2015 and used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

> "The Drew Dinkmeyer Defendant Class: All individuals and entities who made a wager or bet against a Florida resident with DraftKings or FanDuel and/or made a wager or bet with FanDuel that were in the top 1.5% of winners on DraftKings and/or FanDuel at any point in time from February 1, 2012 through October 6, 2015, were Florida residents, and used "scripts," "robots," "spiders," "scrapers," "sniping software" or other

methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

"The Matthew Boccio FanDuel Employee Class": All individuals and entities who made a wager or bet against a Florida resident with FanDuel or DraftKings that were employees of FanDuel and made a wager or bet in a FanDuel or DraftKings fantasy sports game utilizing insider information with FanDuel or DraftKings from February 1, 2012 through October 6, 2015.

"The Ethan Haskell DraftKings' Employee Class": All individuals and entities who made a wager or bet against a Florida resident with DraftKings or FanDuel and were employees of DraftKings and made a wager or bet in a FanDuel or DraftKings fantasy sports game utilizing insider information with FanDuel or DraftKings from February 1, 2012 through October 6, 2015.

199.    Excluded from the Classes are Defendants FanDuel, DraftKings, Mr. Sud, Mr. Dinkmeyer, Mr. Boccio, Mr. Haskell, Bank Defendants, Facilitator Defendants, Payment Processor Defendants, Defendant Class Members and their employees, officers, directors, legal representatives, successors and wholly or partly owned subsidiaries or affiliated companies; class counsel and their employees.

## Ascertainability

200.    The Classes can be readily identified using Defendants FanDuel and DraftKings User Agreements, payment records, payout records and other information kept by Defendants FanDuel and DraftKings or third parties in the usual course of business and within their control.

## Numerosity

201.    Defendant FanDuel admits to in excess of 1 million paid active users, the number of Class Members is great enough that joinder is impracticable.

202.    Upon information and belief, Defendant DraftKings has in excess of 1 million paid active users, the number of Class Members is great enough that joinder is impracticable.

## Typicality

203.    Plaintiffs' claims are typical of the claims of the Class, as Plaintiff and Class Members alike were victims of Defendant FanDuel's common course of conduct, to wit: a) FanDuel does not disclose to other users such as Plaintiff and Class Members if a particular user uses "robots," "spiders," "scrapers," or "sniping software" that may give those users an unfair advantage over Plaintiffs and Class Members; b) FanDuel failed to disclose to Class Representatives and Class Members that it created a situation whereby Apex predators and Shark bettors have an unfair advantage by obtaining better information from FanDuel that is tantamount to insider trading and was not provided to Class Representatives and Class Members; and c) FanDuel's multi-page internet User Agreement is unconscionable, contrary to public policy, unmanageable and is intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

204.    Plaintiffs' claims are typical of the claims of the Class, as Plaintiff and Class Members alike were victims of Defendant DraftKings' common course of conduct, to wit: a) DraftKings does not disclose to other users such as Plaintiff and Class Members if a particular user uses "scripts" that may give those users an unfair advantage over Plaintiffs and Class Members; b) DraftKings failed to disclose to Class Representatives and Class Members that it created a situation whereby Apex predators and Shark bettors have an unfair advantage by obtaining better information from DraftKings that is tantamount to insider trading and was not provided to Class Representatives and Class Members; and c) DraftKings' multi-page internet User Agreement is unconscionable, contrary to public policy, unmanageable and is intended to

hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

## Adequacy of Representation

205.    Plaintiffs will fairly and adequately protect the Classes' interests and have retained counsel competent and experienced in class-action litigation.  Plaintiffs' interests are coincident with, and not antagonistic to, absent Class Members' interests because by proving their individual claims they will necessarily prove the liability of all Defendants to the Plaintiff Classes.  Plaintiffs are also cognizant of, and determined to, faithfully discharge their fiduciary duties to the absent Class Members as the Class representatives.

206.    Plaintiffs' counsel have substantial experience in prosecuting class actions. Plaintiffs and counsel are committed to vigorously prosecuting this action, have the financial resources to do so, and do not have any interests adverse to the Classes.

## Commonality and Predominance

207.    There are numerous questions of law and fact the answers to which are common to each Class and predominate over questions affecting only individual Members, including the following:

a)      whether the multi-page internet User Agreements for Defendant FanDuel are void and of no effect, unconscionable, illegal contracts, contracts of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Class Representatives and Class Members;

b)      whether FanDuel failed to disclose to Class Representatives and Class Members that they were participating in an illegal gambling enterprise and that if a particular user uses "robots," "spiders," "scrapers," or "sniping software" that may give those users an unfair advantage over Class Representatives and Class Members;

c)      whether FanDuel failure to disclose to Class Representatives and Class Members if a particular user uses "robots," "spiders," "scrapers," or "sniping software" was negligent;

d)      whether FanDuel breached its User Agreement;

e)      whether FanDuel failed to disclose to Class Representatives and Class Members that it setup a system whereby Apex predator or Shark bettors have an unfair advantage by obtaining better information from FanDuel that is tantamount to insider trading and was not provided to Class Representatives and Class Members;

f)      whether FanDuel's failure to disclose to Class Representatives and Class Members to Class Representatives and Class Members that it setup a system whereby Apex predator or Shark bettors have an unfair advantage by obtaining better information from FanDuel that is tantamount to insider trading and was not provided to Class Representatives and Class Members was negligent;

g)      whether FanDuel failed to disclose to Class Representatives and Class Members that its employees are privy to crucial statistical information, including lineup data, insider information, and play on FanDuel's fantasy sports games against FanDuel users;

h)      whether FanDuel failure to disclose to Class Representatives and Class Members that its employees are privy to crucial statistical information, including lineup data, insider information, and play on FanDuel's fantasy sports games against FanDuel users was negligent;

i)      whether the multi-page internet User Agreements for Defendant DraftKings are void and of no effect, unconscionable, contracts of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Class Representatives and Class Members;

j)      whether DraftKings failed to disclose to Class Representatives and Class Members the use of scripts on its website that may give those users an unfair advantage over Class Representatives and Class Members;

k)      whether DraftKings breached its User Agreement;

l)      whether DraftKings failure to disclose to Class Representatives and Class Members the use of scripts on its website that may give

those users an unfair advantage over Class Representatives and Class Members was negligent;

m) whether DraftKings failed to disclose to Plaintiff and Class Members that it created a situation whereby Apex predators and Shark bettors have an unfair advantage by obtaining better information from DraftKings that is tantamount to insider trading and was not provided to Plaintiff and Class Members;

n) whether DraftKings failure to disclose to Class Representatives and Class Members that it created a situation whereby Apex predators and Shark bettors have an unfair advantage by obtaining better information from DraftKings that is tantamount to insider trading and was not provided to Class Representatives and Class Members was negligent;

o) whether DraftKings failed to disclose to Class Representatives and Class Members that its employees are privy to crucial statistical information, including lineup data, insider information, and play on FanDuel's fantasy sports games against FanDuel users;

p) whether DraftKings failed to disclose to Class Representatives and Class Members that its employees are privy to crucial statistical information, including lineup data, insider information, and play on FanDuel's fantasy sports games against FanDuel users was negligent;

q) whether DraftKings and FanDuel's conduct was "unfair," "deceptive" or "unconscionable" under the Florida's Deceptive and Unfair Trade Practices Act;

r) whether all Defendants' conduct violated civil RICO because the internet fantasy sports gaming is a form of illegal internet gambling;

s) whether all Defendants' conduct was a civil conspiracy;

t) whether the Bank Defendants, Facilitator Defendants and Processor Defendants were unjustly enriched;

u) whether DraftKings and FanDuel's fantasy sports betting games are illegal gambling under state laws and violate 18 U.S.C. §1955;

v) whether DraftKings and FanDuel's conduct violates the Federal Trade Commission Act;

w)   whether Class Representatives and Class Members are entitled to injunctive relief; and,

x)   whether DraftKings and FanDuel's conduct injured Class Representatives and Class Members and, if so, the extent of the damages.

### Superiority and Manageability

208.   A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all the individual Class Members is impracticable.  Likewise, because the damages suffered by each individual Class Member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class Members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.

209.   The prosecution of separate actions by the individual Class Members would also create a risk of inconsistent or varying adjudications for individual Class Members, which could also establish incompatible standards of conduct for the Defendants. The conduct of this action as a class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

### Defendant Classes

210.   In addition to the Plaintiff Classes, this case also seeks certification of Defendant Classes, defined as follows:

"The Saahil Sud Defendant Class":  All individuals and entities who made a wager or bet against a Florida resident with DraftKings or FanDuel and made a wager or bet with FanDuel or DraftKings that were in the top 1.5% of winners on DraftKings and/or FanDuel at any point in time from February 1, 2012 through October 6, 2015 and used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

"The Drew Dinkmeyer Defendant Class: All individuals and entities who made a wager or bet against a Florida resident with DraftKings or FanDuel and/or made a wager or bet with FanDuel that were in the top 1.5% of winners on DraftKings and/or FanDuel at any point in time from February 1, 2012 through October 6, 2015, were Florida residents, and used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

"The Matthew Boccio FanDuel Employee Class": All individuals and entities who made a wager or bet against a Florida resident with FanDuel or DraftKings that were employees of FanDuel and made a wager or bet in a FanDuel or DraftKings fantasy sports game utilizing insider information with FanDuel or DraftKings from February 1, 2012 through October 6, 2015.

"The Ethan Haskell DraftKings' Employee Class": All individuals and entities who made a wager or bet against a Florida resident with DraftKings or FanDuel and were employees of DraftKings and made a wager or bet in a FanDuel or DraftKings fantasy sports game utilizing insider information with FanDuel or DraftKings from February 1, 2012 through October 6, 2015.

**Numerosity**

211.   The proposed Saahil Sud Defendant Class is so numerous that joinder of all Members would be impracticable. Upon information and belief, hundreds if not thousands of players were in the top 1.5% of winners on FanDuel and DraftKings and used  "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

212.   Upon information and belief, Mr. Sud enters hundreds of daily contests on baseball and football at with DraftKings and FanDuel under the name "maxdalury" his

participation in the contests has affected thousands of Class Members, the number of Class Members is great enough that joinder is impracticable.

213.    Upon information and belief, Mr. Dinkmeyer enters hundreds of daily contests on baseball and football at with DraftKings and FanDuel under the name "Dinkpiece" his participation in the contests has affected thousands of Class Members, the number of Class Members is great enough that joinder is impracticable.

214.    Upon information and belief, Mr. Dinkmeyer enters hundreds of daily contests on baseball and football at with DraftKings and FanDuel and his participation in the contests has affected thousands of Class Members, the number of Class Members is great enough that joinder is impracticable.

215.    The proposed Drew Dinkmeyer Defendant Class is so numerous that joinder of all Members would be impracticable. Upon information and belief, hundreds if not thousands of players were in the top 1.5% of winners on FanDuel and DraftKings and used   "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel.

216.    The proposed Matthew Boccio FanDuel Employee Defendant Class is so numerous that joinder of all Members would be impracticable. Upon information and belief, dozens of FanDuel employees entered into a User Agreement with DraftKings or FanDuel and were employees of FanDuel and made a wager in a fantasy sports game with FanDuel or DraftKings utilizing insider information from February 1, 2012 through October 6, 2015.

217.    The proposed Ethan Haskell DraftKings' Employee Defendant Class is so numerous that joinder of all Members would be impracticable. Upon information and belief,

dozens of DraftKings' employees entered into a User Agreement with DraftKings or FanDuel and were employees of DraftKings and made a wager in a fantasy sports game with FanDuel or DraftKings utilizing insider information from February 1, 2012 through October 6, 2015.

### Adequacy and Typicality

218.    Saahil Sud is an adequate and typical class representative for the Defendant Class because, upon information and belief, he utilized "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel. Mr. Sud will fairly and adequately represent and protect the interests of the Members of the Defendant Class because he bears a substantial financial interest in the outcome of this litigation and his interests are coincident with, and not antagonistic to, the other Defendant Class Members' interests. Additionally, Mr. Sud, upon information and belief has substantial financial resources and access to competent counsel.

219.    Drew Dinkmeyer is an adequate and typical class representative for the Defendant Class  because, upon information and belief, he utilized "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods to gain an unfair advantage over Plaintiffs and Class Members which was undisclosed to other users by DraftKings or FanDuel. Mr. Dinkmeyer is a Florida resident and his acts and omissions took place in the state of Florida. Mr. Dinkmeyer will fairly and adequately represent and protect the interests of the Members of the Defendant Class because he bears a substantial financial interest in the outcome of this litigation and his interests are coincident with, and not antagonistic to, the other Defendant Class Members' interests. Additionally, Mr. Dinkmeyer, upon information and belief, has substantial financial resources and access to competent counsel.

220.     Ethan Haskell is an adequate and typical class representative for the Ethan Haskell DraftKings' Employee Defendant Class because, upon information and belief, he played fantasy sports betting games on DraftKings and FanDuel utilizing insider information from DraftKings.

221.     Matthew Boccio is an adequate and typical class representative for the Matthew Boccio FanDuel Employee Defendant Class because, upon information and belief, he played fantasy sports betting games on DraftKings and FanDuel utilizing insider information from FanDuel.

**Commonality and Predominance**

222.     The claims against the Defendant Class Members involve questions of law and fact common to the Defendant Class Members that predominate over any potential questions affecting only individual Members of the Defendant Class, including among other things:

a)      whether Mr. Sud and other Defendant Class Members used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods gave an unfair advantage to Mr. Sud and Defendant Class Members over Plaintiffs and Class Members in DraftKings and FanDuel's fantasy sports betting games;

b)      whether Mr. Sud and other Defendant Class Members disclosed to DraftKings or FanDuel that they were using "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods gave an unfair advantage to Mr. Sud and Defendant Class Members;

c)      whether DraftKings and FanDuel gave Mr. Sud and other Defendant Class Members permission to use "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods that gave an unfair advantage over Plaintiffs and Class Members to Mr. Sud and Defendant Class Members;

d)      whether Mr. Dinkmeyer and other Defendant Class Members used "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods gave an unfair advantage to Mr. Dinkmeyer and other Defendant Class Members over Plaintiffs and Class Members in DraftKings and FanDuel's fantasy sports betting games;

e)      whether Mr. Dinkmeyer and other Defendant Class Members disclosed to DraftKings or FanDuel that they were using "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods gave an unfair advantage to Mr. Dinkmeyer and Defendant Class Members;

f)      whether DraftKings and FanDuel gave Mr. Dinkmeyer and other Defendant Class Members permission to use "scripts," "robots," "spiders," "scrapers," "sniping software" or other methods that gave an unfair advantage over Plaintiffs and Class Members to Mr. Dinkmeyer and Defendant Class Members;

g)      whether Ethan Haskell and other DraftKings' employees played fantasy sports betting games on DraftKings and FanDuel utilizing insider information from DraftKings and whether such information was an unfair advantage over Plaintiff and Class Members;

h)      whether Matthew Boccio and other FanDuel employees played fantasy sports betting games on DraftKings and FanDuel utilizing insider information from FanDuel and whether such information was an unfair advantage over Plaintiff and Class Members; and,

i)      whether the Defendant Class Members' conduct injured the Plaintiff Class Members and, if so, the extent of the damages.

223.    The Defendant Classes share a juridical link in that all Members of the Defendant Classes participated in a DraftKings of FanDuel fantasy sports games with an unfair advantage that was undisclosed to Plaintiffs and Class Members.

224.    Certification of the Defendant Classes is appropriate pursuant to Federal Rule of Civil Procedure 23(b)(2) because the Defendant Classes have acted with respect to the Plaintiffs' Class in a manner generally applicable to each Class Member.

225.    Certification of the Defendant Classes is also appropriate pursuant to Federal Rule of Civil Procedure 23(b)(3) because there is a well-defined community of interest in the questions of law and fact involved in the action, which affect all Members of the Defendant Classes, and questions of law or fact common to the respective Members of the Defendant

Classes predominate over any potential questions of law or fact affecting only individual Members of the Defendant Classes.

### Superiority and Manageability

226. This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims including consistency of adjudications. Absent a class action, the Defendant Classes would likely incur significantly greater expenses in separately defending themselves in this action, or in numerous individual actions, than they would incur in their defense of a Defendants' class action.

227. A class action involving both Plaintiff Classes and a Defendant Classes is an appropriate method for the adjudication of the controversy in that it will permit a large number of claims against a large number of defendants to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution and/or redundant defense of numerous individual actions and the duplication of discovery, effort, expense, and the burden on the courts that individual actions would create.

228. Defendant Classes, whether as to liability as a whole or as to certain common issues, provides a superior method to adjudicate this matter by permitting the collaborative defense of claims involving common legal issues, outweighing any difficulties that might be argued with regard to the management of the class action.

### <u>COUNTS</u>

229. For ease of reference the claims that follow are summarized in the table below:

| Count | Asserted By | Asserted Against | Claim |
|-------|-------------|------------------|-------|
| 1. | Plaintiff Wax | FanDuel | Negligence |
| 2. | Plaintiff Wax | FanDuel | Breach of Contract (good faith & fair dealing) |
| 3. | Plaintiff Wax | FanDuel | Declaratory & Injunctive |

| | | | Relief |
|---|---|---|---|
| 4. | Plaintiffs Wax & Rosen | Matthew Boccio FanDuel Employee Defendant Class | Negligence |
| 5. | Plaintiff Rosen | DraftKings | Negligence |
| 6. | Plaintiff Rosen | DraftKings | Breach of Contract (good faith & fair dealing) |
| 7. | Plaintiff Rosen | DraftKings | Declaratory & Injunctive Relief |
| 8. | Plaintiffs Wax & Rosen | Ethan Haskell DraftKings' Employee Defendant Class | Negligence |
| 9. | Plaintiffs Wax & Rosen | Bank Defendants, Facilitator Defendants and Payment Processor Defendants | Unjust Enrichment |
| 10. | Plaintiff Wax | FanDuel, Sud Defendant Class, Dinkmeyer Defendant Class, Matthew Boccio, FanDuel Defendant Class and Ethan Haskell FanDuel Defendant Class, Bank Defendants, Facilitator Defendants, Payment Processor Defendants, FanDuel Investors | Civil Rico |
| 11. | Plaintiff Rosen | DraftKings, Sud Defendant Class, Dinkmeyer Defendant Class, Matthew Boccio, FanDuel Defendant Class and Ethan Haskell FanDuel Defendant Class, Bank Defendants, Facilitator Defendants, Payment Processor Defendants, DraftKings Investors | Civil Rico |
| 12. | Plaintiff Wax | FanDuel, Sud Defendant Class, Dinkmeyer Defendant Class, Matthew Boccio, FanDuel Defendant Class and Ethan Haskell FanDuel Defendant Class, Bank Defendants, Facilitator | Civil Conspiracy |

| | | Defendants, Payment Processor Defendants, FanDuel Investors | |
|---|---|---|---|
| 13. | Plaintiff Rosen | DraftKings, FanDuel, Sud Defendant Class, Dinkmeyer Defendant Class, Matthew Boccio FanDuel Defendant Class and Ethan Haskell FanDuel Defendant Class, Bank Defendants, Facilitator Defendants, Payment Processor Defendants, DraftKings Investors | Civil Conspiracy |
| 14. | Plaintiff Wax | National Basketball Association | Negligence |
| 15. | Plaintiff Rosen | Major League Baseball Ventures, Major League Soccer LLC, NHL Enterprises, Inc., and NHL Enterprises LP | Negligence |
| 16. | Plaintiff Wax | FanDuel | Florida Deceptive and Unfair Trade Practices Act |
| 17. | Plaintiff Rosen | DraftKings | Florida Deceptive and Unfair Trade Practices Act |

## COUNT 1-NEGLIGENCE

### *Plaintiff Wax v. FanDuel*

230.     Plaintiff Wax adopts and restates paragraphs 1, 3-5, 9-10, 122-151, 153-178, 198-201, 203 and 205-209, as if fully set forth herein.

231.     Defendant FanDuel, at all times relevant, had a duty to Plaintiffs and Class Members who were participating in its fantasy sports betting games to act reasonably and with due care in administering its fantasy sports betting games so as not to allow other users of

FanDuel an unfair advantage at playing the alleged games of "skill" administered by FanDuel. Defendant's duty includes, but was not limited to the following:

   (a)      preventing users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

   (b)      disclosing to Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

   (c)      warning Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

   (d)      preventing its own employees and DraftKings' employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

   (e)      disclosing to Plaintiff and Class Members they were inadvertently participating on an illegal internet gambling enterprise and that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)  warning Plaintiff and Class Members that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(g)  exercising reasonable care in the administration of fantasy sports betting games to prevent users from utilizing inside information and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members.

232.  Defendant, at all times relevant, failed in its duty to Plaintiffs and Class Members who were participating in its fantasy sports betting games to act reasonably and with due care in administering its fantasy sports betting games so as not to allow other users of FanDuel an unfair advantage at playing the alleged games of "skill" administered by FanDuel. Defendant's breaches of its duty includes, but was not limited to the following:

(a)  failing to prevent users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)  failing to disclose to Plaintiff and Class Members that they were inadvertently participating in an illegal internet gambling enterprise and that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)  failing to warn Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers,"

"sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)　　failing to prevent its own employees and DraftKings' employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)　　failing to disclose to Plaintiff and Class Members that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)　　failing to warn Plaintiff and Class Members that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(g)　　otherwise failing to exercise reasonable care in the administration of fantasy sports betting games to prevent users from utilizing inside information and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members.

233.　　Defendant knew or should have known that its wrongful acts and omissions would cause serious injury to Plaintiff Class Representatives and Class Members.

234.　　Defendant's conduct has directly and proximately caused economic damages to Plaintiff Class Representatives and Class Members.

235.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have incurred economic damages in the form of their user fees and wagers they placed on Defendant's fantasy sports betting games.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demand:

      a.   certification of the proposed Plaintiffs' Classes;

      b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

      c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Classes;

      d.   compensatory damages;

      e.   pre and post-judgment interest;

      f.   an award of taxable costs; and,

      g.   any and all such further relief as this Court deems just and proper.

### COUNT 2-BREACH OF CONTRACT
### (DUTY OF GOOD FAITH AND FAIR DEALING)

*Plaintiff Wax v. FanDuel*

236.     Plaintiff Wax adopts and restates paragraphs 1, 3-5, 9-10, 122-151, 153-178, 198-201, 203 and 205-209, as if fully set forth herein.

237.      Defendant made an offer to permit Plaintiff Class Representatives and Class Members to use their fantasy sports betting website and participate in betting.

238.     Plaintiff Class Representatives and Class Members accepted Defendant's offer.

239.     As consideration, Plaintiff Class Representatives and Class Members paid a user fee.

240.   Plaintiff Class Representatives have attached the User Agreement contract as Exhibit "A".

241.   Every contract, including the subject User Agreement has in it an inherent duty of good faith and fair dealing.

242.   Defendant breached its duty of good faith and fair dealing inherent in the User Agreement by:

(a)   failing to prevent users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)   failing to disclose to Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)   failing to warn Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)   failing to prevent its own employees and DraftKings' employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)     failing to disclose to Plaintiff and Class Members that its own employees and DraftKings' employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

243.    As a direct and proximate cause of Defendant's breach of contract, Plaintiff Class Representatives and Class Members have incurred or will incur economic damages.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiffs' Classes;

b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Classes;

d.   compensatory damages;

e.   pre and post-judgment interest;

f.   an award of taxable costs; and,

g.   any and all such further relief as this Court deems just and proper.

## COUNT 3-DECLARATORY & INJUNCTIVE RELIEF

*Plaintiff Wax v. FanDuel*

244.    Plaintiff Wax adopts and restates paragraphs 1, 3-5, 9-10, 122-151, 153-178, 198-201, 203 and 205-209, as if fully set forth herein.

245.    This is a count for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, based upon the Defendant's conduct in violating the Federal Trade Commission Act, 15 U.S.C. §§ 41-58,  and to declare Defendant's multi-page internet User Agreement, Ex. B,

unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

246.     Section 28 U.S.C. § 2201 provides in relevant part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

247.     28 U.S.C. § 2202 provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

248.     Plaintiff Class Representatives and Class Members are in doubt as to whether Defendant violated the Federal Trade Commission Act and as to whether Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members

249.     Plaintiff Class Representatives and Class Members are in doubt as to whether Defendant operated an illegal gambling service in violation of 31 U.S.C. §§ 5361-5367. Defendant has taken the position that it was legally operating a "game of skill," not of chance. See 31 U.S.C. §§ 5361-5367.

250.     An actual case or controversy exists within the meaning of 28 U.S.C. § 2201 because Defendant engaged in conduct that violated the Federal Trade Commission Act and required Plaintiff Class Representatives and Class Members to enter into unconscionable, a

contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members. Specifically, Defendant:

(a)     engaged in "commerce" within the meaning of 15 U.S.C. § 44;

(b)     is a "corporation" within the meaning of 15 U.S.C. § 44;

(c)     engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

(d)     disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55;

(e)     required Plaintiff and Class Members to enter into an unconscionable User Agreement that was a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members;

(f)     violated 31 U.S.C. §§ 5361-5367 as a result of the activities set forth herein and the laws of all 50 states prohibiting internet gambling;

(g)     that violation of 31 U.S.C. §§ 5361-5367 and the laws of all 50 states prohibiting internet gambling were illegal acts by Defendant and render the User Agreements it entered into with Plaintiffs and Class Members void or voidable because Defendant attempts to have Plaintiffs and Class Members contract with them to commit illegal acts;

(h)     that the multi-page internet User Agreements at Exhibits A and B are procedurally and substantively unconscionable, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law, class action limitation, and as such, their terms are unenforceable against Plaintiffs and Class Members. Further, the arbitration, venue, application of foreign law, class action limitation provisions place an unreasonable economic and procedural burden on Plaintiffs and Class Members making the User Agreements unenforceable as a matter of law. Furthermore, the User Agreements relate to

participating in an illegal contract and is therefore void ab initio and of no force or effect.

251.   Specifically, Plaintiff and the Plaintiff Classes seek a declaratory decree finding

that Defendant:

(a)   engaged in "commerce" within the meaning of 15 U.S.C. § 44;

(b)   is a "corporation" within the meaning of 15 U.S.C. § 44;

(c)   engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

(d)   disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55;

(e)   required Plaintiff and Class Members to enter into an unconscionable User Agreement that was a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members and constituted an agreement based on illegal gambling so that it is void ab initio and of no force and effect;

(f)   violated 31 U.S.C. §§ 5361-5367 as a result of the activities set forth herein and the laws of all 50 states prohibiting internet gambling;

(g)   that violation of 31 U.S.C. §§ 5361-5367 and the laws of all 50 states prohibiting internet gambling were illegal acts by Defendant and render the User Agreements it entered into with Plaintiffs and Class Members void or voidable because Defendant attempts to have Plaintiffs and Class Members contract with them to commit illegal acts; and,

(h)   that the multi-page internet User Agreements at Exhibits A and B are procedurally and substantively unconscionable, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law, class action limitation, and as such, their terms are unenforceable against Plaintiffs and Class Members. Further, the arbitration, venue, application of foreign law, class action limitation provisions place an unreasonable economic and procedural burden on Plaintiffs and Class Members making the User Agreements unenforceable as a

matter of law. Furthermore, the User Agreements relate to participating in an illegal contract and is therefore void ab initio and of no force or effect.

252.    Plaintiff Class Representatives and Class Members also seek a declaratory decree finding that Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

253.    Plaintiff Class Representatives and Class Members also seek a declaratory decree finding that Defendant's violation of 31 U.S.C. §§ 5361-5367 renders the User Agreement void ab initio due to its illegality, voidable or unconscionable in its entirety and unenforceable against Plaintiffs and Class Members.

254.    The aforementioned case or controversy is justiciable and actual and concerns an important issue that should be resolved.

255.    As a direct and proximate cause of the Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have suffered actual injuries in the form of economic damages.

256.    Plaintiff Class Representatives and Class Members face a further threatened injury, the continued unfair and deceptive acts described herein, which, to date, has not ceased.

257.    The requested relief would provide a remedy and redress for Plaintiffs and Plaintiff Class members' injuries.

258.    The issues in this count are ripe for judicial review because there is a genuine need to redress Plaintiffs and Plaintiff Class members' injuries and threatened injuries.

259.    The existence of another adequate remedy does not preclude a judgment for declaratory relief.

260.    Plaintiff Class Representatives and Class Members are entitled to actual damages.

261.    As a result of Defendant's conduct in this matter, Plaintiff Class Representatives were required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

262.    As a direct and proximate cause of Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have incurred liquidated economic damages in the form of entry fees and lost wagers, plus interest.

263.    Pursuant to 28 U.S.C. § 2202 upon prevailing in this declaratory decree, Plaintiff Class Representatives and Class Members are entitled to further necessary or proper supplemental relief in the form of an award to Plaintiffs' Classes of any monies lost pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a)  certification of the proposed Plaintiffs' Classes;

b)  appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c)  appointment of the undersigned counsel as lead counsel for the Plaintiffs' Classes;

d)  a declaration that Defendant engaged in "commerce" within the meaning of 15 U.S.C. § 44;

e)  a declaration that Defendant a "corporation" within the meaning of 15 U.S.C. § 44;

f)  a declaration that Defendant engaged in unfair methods of competition in

or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

g) a declaration that Defendant disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55.

h) a declaration that Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members;

i) a declaration that Defendant Plaintiff and Class Members to enter into an unconscionable User Agreement that was a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members;

j) a declaration that Defendant violated 31 U.S.C. §§ 5361-5367 as a result of the activities set forth herein and the laws of all 50 states prohibiting internet gambling;

k) a declaration that violation of 31 U.S.C. §§ 5361-5367 and the laws of all 50 states prohibiting internet gambling were illegal acts by Defendant and render the User Agreements it entered into with Plaintiffs and Class Members void or voidable because Defendant attempts to have Plaintiffs and Class Members contract with them to commit illegal acts;

l) a declaration that the multi-page internet User Agreements at Exhibits A and B are procedurally and substantively unconscionable, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law, class action limitation, and as such, their terms are unenforceable against Plaintiffs and Class Members. Further, the arbitration, venue, application of foreign law, class action limitation provisions place an unreasonable economic and procedural burden on Plaintiffs and Class Members making the User Agreements unenforceable as a matter of law;

m) an order enjoining Defendant from engaging any further in the unlawful conduct set forth herein;

n) an award to Plaintiffs' Classes of any monies paid pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs, and other applicable law; and,

o)   such other relief as this Court deems just and equitable.

## COUNT 4-NEGLIGENCE

*Plaintiffs Wax & Rosen v. Matthew Boccio FanDuel Employee Defendant Class*

264.    Plaintiffs Wax and Rosen adopt and restate paragraphs 1-2, 19-20, 122-178, 198-201, 203, 205-201, 216 and 221-229 as if fully set forth herein.

265.    Defendant Class Representative Matthew Boccio and the Defendant Class, at all times relevant, had a duty to Class Representatives and Class Members who were participating in fantasy sports betting games on Defendants FanDuel and Draft Kings' websites to act reasonably and with due care in disclosing that they had an unfair advantage, via insider information and other methods at playing the alleged games of "skill" administered Defendants FanDuel and Draft Kings. Defendant's duty includes, but was not limited to the following:

(a)    not utilizing inside information from their employment, elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(b)    disclosing to Class Representatives and Class Members they were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(c)    disclosing to FanDuel and DraftKings that other users were utilizing inside information from their employers, elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(d)     warning   Class   Representatives   and   Class   Members   that   they   were utilizing   inside   information   from   their   employers,   elaborate   computer   programs   and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(e)     not utilizing insider information to gain an unfair advantage over Class Representatives and Class Members;

(f)     disclosing to Class Representatives and Class Members that Defendant were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members;

(g)     disclosing to FanDuel and DraftKings that Defendant were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members to gain an unfair advantage over Class Representatives and Class Members;

(h)     warning Class Representatives and Class Members that Defendant were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members; and,

(i)     exercising reasonable care in wagering on fantasy sports betting games to prevent Class Representatives and Class Members other from being harmed via Defendant's unfair advantage.

266.    Defendant Class Representative Matthew Boccio and the Defendant Class at all times relevant, failed in their duty to Class Representatives and Class Members who were participating in fantasy sports betting games on Defendants DraftKings and FanDuel's websites to act reasonably and with due care in disclosing that they had an unfair advantage, via insider information   and   other   methods   at   playing   the   alleged   games   of   "skill"   administered   by

Defendants FanDuel and Draft Kings.  Defendant's breaches of its duty includes, but was not limited to the following:

(a)      utilizing inside information from their employment, elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(b)      failing to disclose to Class Representatives and Class Members they were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(c)      failing to disclose to FanDuel and DraftKings that other users were utilizing inside information from their employers, elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(d)      failing to warn Class Representatives  and Class Members that they were utilizing inside information from their employers, elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;

(e)      utilizing insider information to gain an unfair advantage over Class Representatives and Class Members;

(f)      failing to disclose to Class Representatives and Class Members that Defendant was utilizing insider information to gain an unfair advantage over Class Representatives and Class Members;

(g)     failing to disclose to FanDuel and DraftKings that Defendant was utilizing insider information to gain an unfair advantage over Class Representatives and Class Members to gain an unfair advantage over Class Representatives and Class Members;

(h)     failing to warn Class Representatives and Class Members that Defendant was utilizing insider information to gain an unfair advantage over Class Representatives and Class Members; and,

(i)     failing to otherwise exercising reasonable care in wagering on fantasy sports betting games to Plaintiff Class Representatives and Class Members other from being harmed via Defendant's unfair advantage.

267.    Defendant knew or should have known that its wrongful acts and omissions would cause serious injury to Class Representatives and Class Members.

268.    Defendant's conduct has directly and proximately caused economic damages to Class Representatives and Class Members.

269.    As a direct and proximate cause of Defendant's acts and omissions, Class Representatives and Class Members have incurred economic damages in the form of their user fees and wagers they placed on FanDuel and DraftKings' fantasy sports betting games.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

    a.  certification of the proposed Plaintiffs' Class and Defendant Class;

    b.  appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

    c.  appointment of the undersigned counsel as lead counsel for the Plaintiffs' Class;

    d.  appointment of Matthew Boccio as the representative of the Defendant Class;

  e. compensatory damages;

  f. pre and post-judgment interest;

  g. an award of taxable costs; and,

  h. any and all such further relief as this Court deems just and proper.

**COUNT 5-NEGLIGENCE**

*Plaintiff Rosen v. DraftKings*

270. Plaintiff Rosen adopts and restates paragraphs 2, 6-10, 122-152, 154-178, 198-200, 202 and 204-209, as if fully set forth herein.

271. Defendant DraftKings, at all times relevant, had a duty to Plaintiffs and Class Members who were participating in its fantasy sports betting games to act reasonably and with due care in administering its fantasy sports betting games so as not to allow other users of DraftKings an unfair advantage at playing the alleged games of "skill" administered by DraftKings. Defendant's duty includes, but was not limited to the following:

  (a) preventing users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

  (b) disclosing to Plaintiff and Class Members that they were inadvertently participating in an illegal internet gambling enterprise, that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)     warning Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)     preventing its own employees and DraftKings' employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)     disclosing to Plaintiff and Class Members that its own employees and FanDuel's employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)     warning Plaintiff and Class Members that its own employees and FanDuel's employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(g)     exercising reasonable care in the administration of fantasy sports betting games to prevent users from utilizing inside information and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members.

272.    Defendant, at all times relevant, failed in its duty to Plaintiffs and Class Members who were participating in its fantasy sports betting games to act reasonably and with due care in administering its fantasy sports betting games so as not to allow other users of DraftKings an

unfair advantage at playing the alleged games of "skill" administered by DraftKings. Defendant's breaches of its duty includes, but was not limited to the following:

(a)     failing to prevent users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)     failing to disclose to Plaintiff and Class Members that they were inadvertently participating in an illegal internet gambling enterprise, that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)     failing to warn Plaintiff and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)     failing to prevent its own employees and FanDuel's employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)     failing to disclose to Plaintiff and Class Members that its own employees and FanDuel's employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)      failing to warn Plaintiff and Class Members that its own employees and FanDuel's employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(g)      otherwise failing to exercise reasonable care in the administration of fantasy sports betting games to prevent users from utilizing inside information and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members.

273.     Defendant knew or should have known that its wrongful acts and omissions would cause serious injury to Plaintiff Class Representatives and Class Members.

274.     Defendant's conduct has directly and proximately caused economic damages to Plaintiff Class Representatives and Class Members.

275.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have incurred economic damages in the form of their user fees and wagers they placed on Defendant's fantasy sports betting games.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiffs' Classes;

b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Classes;

d.   compensatory damages;

e.   pre and post-judgment interest;

f.   an award of taxable costs; and,

g.   any and all such further relief as this Court deems just and proper.

## COUNT 6-BREACH OF CONTRACT
## (DUTY OF GOOD FAITH AND FAIR DEALING)

*Plaintiff Rosen v. DraftKings*

276.   Plaintiff Rosen adopts and restate paragraphs 2, 6-10, 122-152, 154-178, 198-200, 202 and 204-209, as if fully set forth herein.

277.    Defendant made an offer to permit Plaintiff Class Representative and Class Members to use their fantasy sports betting website and participate in betting.

278.   Plaintiff Class Representative and Class Members accepted Defendant's offer.

279.   As consideration, Plaintiff Class Representative and Class Members paid a user fee.

280.   Plaintiff Class Representative has attached the User Agreement contract as Exhibit "B".

281.   Every contract, including the subject User Agreement has in it an inherent duty of good faith and fair dealing.

282.   Defendant breached its duty of good faith and fair dealing inherent in the User Agreement by:

(a)      failing to prevent users from utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representative and Class Members;

(b)      failing to disclose to Plaintiff and Class Members that they were inadvertently participating in an illegal internet gambling enterprise, that other users were

75

utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representative and Class Members;

(c)     failing to warn Plaintiff Class Representative and Class Members that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)     failing to prevent its own employees and FanDuel's employees from utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(e)     failing to disclose to Plaintiff and Class Members that its own employees and FanDuel's employees were utilizing inside information, "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members.

283.     As a direct and proximate cause of Defendant's breach of contract, Plaintiff Class Representatives and Class Members have incurred or will incur economic damages.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiffs' Classes;

b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Classes;

d.  compensatory damages;

e.  pre and post-judgment interest;

f.  an award of taxable costs; and,

g.  any and all such further relief as this Court deems just and proper.

## COUNT 7-DECLARATORY & INJUNCTIVE RELIEF

### *Plaintiff Rosen v. DraftKings*

284.  Plaintiff Rosen adopts and restate paragraphs 2, 6-10, 122-152, 154-178, 198-200, 202 and 204-209, as if fully set forth herein.

285.  This is a count for injunctive and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, based upon the Defendant's conduct in violating the Federal Trade Commission Act, 15 U.S.C. §§ 41-58, and to declare Defendant's multi-page internet User Agreement, Ex. B, unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

286.  Section 28 U.S.C. § 2201 provides in relevant part:

> In a case of actual controversy within its jurisdiction … any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

287.  28 U.S.C. § 2202 provides: "Further necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

288.    Plaintiff Class Representatives and Class Members are in doubt as to whether Defendant violated the Federal Trade Commission Act and as to whether Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members

289.    Plaintiff Class Representatives and Class Members are in doubt as to whether Defendant operated an illegal gambling service in violation of 31 U.S.C. §§ 5361-5367. Defendant has taken the position that it was legally operating a "game of skill," not of chance. See 31 U.S.C. §§ 5361-5367.

290.    An actual case or controversy exists within the meaning of 28 U.S.C. § 2201 because Defendant engaged in conduct that violated the Federal Trade Commission Act and required Plaintiff Class Representatives and Class Members to enter into unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members. Specifically, Defendant:

(a)    engaged in "commerce" within the meaning of 15 U.S.C. § 44;

(b)    is a "corporation" within the meaning of 15 U.S.C. § 44;

(c)    engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

(d)    disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55;

(e)    required Plaintiff and Class Members to enter into an unconscionable User Agreement that was a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign

law and as such, its terms are unenforceable against Plaintiffs and Class Members;

(f) violated 31 U.S.C. §§ 5361-5367 as a result of the activities set forth herein and the laws of all 50 states prohibiting internet gambling;

(g) that violation of 31 U.S.C. §§ 5361-5367 and the laws of all 50 states prohibiting internet gambling were illegal acts by Defendant and render the User Agreements it entered into with Plaintiffs and Class Members void or voidable because Defendant attempts to have Plaintiffs and Class Members contract with them to commit illegal acts;

(h) that the multi-page internet User Agreements at Exhibits A and B are procedurally and substantively unconscionable, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law, class action limitation, and as such, their terms are unenforceable against Plaintiffs and Class Members. Further, the arbitration, venue, application of foreign law, class action limitation provisions place an unreasonable economic and procedural burden on Plaintiffs and Class Members making the User Agreements unenforceable as a matter of law. Furthermore, the User Agreements relate to participating in an illegal contract and therefore is void ab initio and of no force and effect.

291. Specifically, Plaintiffs and the Plaintiff Classes seek a declaratory decree finding

that Defendant:

(a) engaged in "commerce" within the meaning of 15 U.S.C. § 44;

(b) is a "corporation" within the meaning of 15 U.S.C. § 44;

(c) engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

(d) disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55;

(e) required Plaintiff and Class Members to enter into an unconscionable User Agreement that was a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign

law and as such, its terms are unenforceable against Plaintiffs and Class Members and constituted an agreement based on illegal gambling so that it is void ab initio and of no force and effect;

(f)     violated 31 U.S.C. §§ 5361-5367 as a result of the activities set forth herein and the laws of all 50 states prohibiting internet gambling;

(g)     that violation of 31 U.S.C. §§ 5361-5367 and the laws of all 50 states prohibiting internet gambling were illegal acts by Defendant and render the User Agreements it entered into with Plaintiffs and Class Members void or voidable because Defendant attempts to have Plaintiffs and Class Members contract with them to commit illegal acts; and,

(h)     that the multi-page internet User Agreements at Exhibits A and B are procedurally and substantively unconscionable, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law, class action limitation, and as such, their terms are unenforceable against Plaintiffs and Class Members. Further, the arbitration, venue, application of foreign law, class action limitation provisions place an unreasonable economic and procedural burden on Plaintiffs and Class Members making the User Agreements unenforceable as a matter of law. Furthermore, the User Agreements relate to participating in an illegal contract and therefore is void ab initio and of no force and effect.

292.    Plaintiff Class Representatives and Class Members also seek a declaratory decree finding that Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members.

293.    Plaintiff Class Representatives and Class Members also seek a declaratory decree finding that Defendant's violation of 31 U.S.C. §§ 5361-5367 renders the User Agreement void, voidable or unconscionable in its entirety and unenforceable against Plaintiffs and Class Members.

294.    The aforementioned case or controversy is justiciable and actual and concerns an important issue that should be resolved.

295.    As a direct and proximate cause of the Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have suffered actual injuries in the form of economic damages.

296.    Plaintiff Class Representatives and Class Members face a further threatened injury, the continued unfair and deceptive acts described herein, which, to date, has not ceased.

297.    The requested relief would provide a remedy and redress for Plaintiffs and Plaintiff Class members' injuries.

298.    The issues in this count are ripe for judicial review because there is a genuine need to redress Plaintiffs and Plaintiff Class members' injuries and threatened injuries.

299.    The existence of another adequate remedy does not preclude a judgment for declaratory relief.

300.    Plaintiff Class Representatives and Class Members are entitled to actual damages.

301.    As a result of Defendant's conduct in this matter, Plaintiff Class Representatives were required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

302.    As a direct and proximate cause of Defendant's acts and omissions, Plaintiff Class Representatives and Class Members have incurred liquidated economic damages in the form of entry fees and lost wagers, plus interest.

303.    Pursuant to 28 U.S.C. § 2202 upon prevailing in this declaratory decree, Plaintiff Class Representatives and Class Members are entitled to further necessary or proper supplemental relief in the form of an award to Plaintiffs' Classes of any monies lost pursuant to

the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a)   certification of the proposed Plaintiffs' Classes;

b)   appointment of the Plaintiffs as representatives of the Plaintiffs' Classes;

c)   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Classes;

d)   a declaration that Defendant engaged in "commerce" within the meaning of 15 U.S.C. § 44;

e)   a declaration that Defendant a "corporation" within the meaning of 15 U.S.C. § 44;

f)   a declaration that Defendant engaged in unfair methods of competition in or affecting commerce, and unfair or deceptive acts in or affecting commerce in violation of 15 U.S.C. § 45;

g)   a declaration that Defendant disseminated or caused to be disseminated false advertisements within the meaning of 15 U.S.C. §§ 52 and 55.

h)   a declaration that Defendant's User Agreement is unconscionable, a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members;

i)   a declaration that Defendant Plaintiff and Class Members to enter into an unconscionable User Agreement that was a contract of adhesion, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law and as such, its terms are unenforceable against Plaintiffs and Class Members;

j)   a declaration that Defendant violated 31 U.S.C. §§ 5361-5367 as a result of the activities set forth herein and the laws of all 50 states prohibiting internet gambling;

k)   a declaration that violation of 31 U.S.C. §§ 5361-5367 and the laws of all 50 states prohibiting internet gambling were illegal acts by Defendant and

render the User Agreements it entered into with Plaintiffs and Class Members void or voidable because Defendant attempts to have Plaintiffs and Class Members contract with them to commit illegal acts;

l) a declaration that the multi-page internet User Agreements at Exhibits A and B are procedurally and substantively unconscionable, contrary to public policy, unmanageable and intended to hide material terms such as arbitration, venue, application of foreign law, class action limitation, and as such, their terms are unenforceable against Plaintiffs and Class Members. Further, the arbitration, venue, application of foreign law, class action limitation provisions place an unreasonable economic and procedural burden on Plaintiffs and Class Members making the User Agreements unenforceable as a matter of law;

m) an order enjoining Defendant from engaging any further in the unlawful conduct set forth herein;

n) an award to Plaintiffs' Classes of any monies paid pursuant to the unlawful conduct set forth herein, all damages recoverable under applicable law, pre- and post-judgment interest, attorneys' fees and allowable costs, and other applicable law; and,

o) such other relief as this Court deems just and equitable.

## COUNT 8-NEGLIGENCE

*Plaintiff Wax & Rosen v. Ethan Haskell DraftKings' Employee Defendant Class*

304.   Plaintiffs Wax and Rosen adopt and restate paragraphs1-2, 17-18, 122-178, 198-200, 202, 204-210, 217, 220 and 222-229, as if fully set forth herein.

305.   Defendant Class Representative Ethan Haskell and the Defendant Class, at all times relevant, had a duty to Plaintiffs and Class Members who were participating in fantasy sports betting games on Defendants FanDuel and Draft Kings' websites to act reasonably and with due care in disclosing that they had an unfair advantage, via insider information and other methods at playing the alleged games of "skill" administered Defendants FanDuel and Draft Kings. Defendant's duty includes, but was not limited to the following:

(a)      not utilizing inside information from its employer and elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)      disclosing to Plaintiff and Class Members that it was utilizing inside information from its employer and elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)      disclosing to FanDuel and DraftKings that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)      warning Plaintiff and Class Members that Defendants were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)      not utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)      disclosing to Plaintiff and Class Members they were utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(g)    disclosing to FanDuel and DraftKings that they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(h)    warning Plaintiff and Class Members that they were utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(i)    exercising reasonable care in wagering on fantasy sports betting games to prevent Plaintiff Class Representatives and Class Members other from being harmed via Defendant's unfair advantage.

306.    Defendant Class Representative Ethan Haskell and the Defendant Class at all times relevant, failed in their duty to Plaintiffs and Class Members who were participating in fantasy sports betting games on Defendants DraftKings and FanDuel's websites to act reasonably and with due care in disclosing that they had an unfair advantage, via insider information and other methods at playing the alleged games of "skill" administered by Defendants FanDuel and Draft Kings.  Defendant's breaches of its duty includes, but was not limited to the following:

(a)    utilizing inside information from its employer and elaborate computer programs and algorithms algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(b)    failing to disclose to Plaintiff and Class Members that it was utilizing inside information from its employer and elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(c)     failing to disclose to FanDuel and DraftKings that other users were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(d)     failing to warn Plaintiff and Class Members that Defendants were utilizing elaborate computer programs and algorithms such as "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(e)     utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(f)     failing to disclose to Plaintiff and Class Members they were utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(g)     failing to disclose to FanDuel and DraftKings that they were utilizing insider information to gain an unfair advantage over Class Representatives and Class Members to gain an unfair advantage over Plaintiff Class Representatives and Class Members;

(h)     failing to warn Plaintiff and Class Members that they were utilizing insider information to gain an unfair advantage over Plaintiff Class Representatives and Class Members; and,

(i)     failing to otherwise exercising reasonable care in wagering on fantasy sports betting games to prevent Plaintiff Class Representatives and Class Members other from being harmed via Defendant's unfair advantage.

307.     Defendant knew or should have known that its wrongful acts and omissions would cause serious injury to Plaintiff Class Representatives and Class Members.

308.     Defendant's conduct has directly and proximately caused economic damages to Plaintiff Class Representatives and Class Members.

309.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiff and Class Members have incurred economic damages in the form of their user fees and wagers they placed on FanDuel and DraftKings' fantasy sports betting games.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

    a.   certification of the proposed Plaintiffs' Class and Defendant Class;

    b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

    c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Class;

    d.   appointment of Ethan Haskell as the representative of the Defendant Class;

    e.   compensatory damages;

    f.   pre and post-judgment interest;

    g.   an award of taxable costs; and,

    h.   any and all such further relief as this Court deems just and proper.

## COUNT 9—UNJUST ENRICHMENT

*Plaintiff Wax & Rosen v. Bank Defendants, Facilitator Defendants and Payment Processor Defendants*

310.     Plaintffs Wax and Rosen adopt and restate paragraphs 1-51 and 122-209 as if fully set forth herein.

311.    The Banking, Facilitator and Payment Processor Defendants unlawfully retained payments from Plaintiffs and profited from the transactions.

312.    Plaintiffs conferred a benefit on the Banking, Facilitator and Payment Processor Defendants by virtue of payments and transaction fees Plaintiffs made to the Banking, Facilitator and Payment Processor Defendants  to make bets and wagers on Defendant FanDuel and DraftKings' websites.

313.    The Banking, Facilitator and Payment Processor Defendants had knowledge of the benefit conferred because it received the payments from Plaintiffs and Class Members.

314.    The Banking, Facilitator and Payment Processor Defendants accepted and retained the benefit, money, that Plaintiff Class Representatives and Class Members conferred for in payments and transaction fees.

315.    The circumstances are such that it would be inequitable for the Banking, Facilitator and Payment Processor Defendants to retain the benefits because of the Defendants FanDuel and DraftKings illegal, unfair and deceptive activities as set forth herein.

316.    The Banking, Facilitator and Payment Processor Defendants knew or should have known that its wrongful acts and omissions would cause serious injury to Plaintiff Class Representatives and Class Members.

317.    Banking, Facilitator and Payment Processor Defendants' conduct has directly and proximately caused economic damages to Plaintiff Class Representatives and Class Members.

318.    As a direct and proximate cause of Banking, Facilitator and Payment Processor Defendants' acts and omissions, Plaintiff and Class Members have incurred economic damages.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

    a.   certification of the proposed Plaintiffs' Class;

    b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

    c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Class;

    d.   compensatory damages;

    e.   pre and post-judgment interest;

    f.   an award of taxable costs; and,

    g.   any and all such further relief as this Court deems just and proper.

**COUNT 10-- VIOLATION OF 18 U.S.C. § 1962(C), THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") BY PLAINTIFF WAX AS TO DEFENDANT FANDUEL, THE ETHAN HASKELL FANDUEL EMPLOYEE DEFENDANT CLASS, THE MATTHEW BOCCIO DRAFTKINGS EMPLOYEE DEFENDANT CLASS, SAAHIL SUD DEFENDANT CLASS, DREW DINKMEYER DEFENDANT CLASS, BANK DEFENDANTS, FACILITATOR DEFENDANTS, PROCESSOR DEFENDANTS AND FANDUEL INVESTOR DEFENDANTS**

319.   Plaintiff Wax adopts and restates paragraphs 1, 3-5, 9-203 and 205-229, as if fully set forth herein.

320.   Independently and collectively, the named Defendants in this Count are responsible for the growth of the illegal internet gambling enterprise to become a multi-billion dollar business by providing legitimacy and funding for what is, in fact, an illegal activity.

321.   Defendant FanDuel was the ringleader of the illegal gambling enterprise, as set forth herein.

322.   Defendant FanDuel Investors pumped millions of dollars into Defendant FanDuel providing legitimacy to the illegal gambling that was occurring and allowing Defendant FanDuel to conduct unprecedented advertising to attract more bettors.

323.    The Bank Defendants, Facilitator Defendants and Processor Defendants all profited from the chain of money going from the unsuspecting Plaintiff and Class Members via the Bank Defendants, Facilitator Defendants and Processor Defendants.

324.    The Shark and Apex bettors all profited from the unsuspecting Plaintiff and Class Members bets via the illegal internet gambling by taking advantage of their advanced programs to cheat Plaintiff and Class Members.

325.    The employees of FanDuel and DraftKings also profited from unsuspecting Plaintiff and Class Members by using insider information to their advantage.

326.    FanDuel is a "person" under 18 U.S.C. § 1961(3).

327.    FanDuel's illegal gambling business involves five or more persons who conduct, finance, manage, supervise direct or own all or part of FanDuel, within the meaning of 18 U.S.C. §1955.

328.    The Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings' Employee Defendant Class, Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and FanDuel Investor Defendants are all "persons" under 18 U.S.C. § 1961(3).

329.    All Defendants named in this count violated 18 U.S.C § 1962(c) by participating in or conducting the affairs of the FanDuel RICO Enterprise through a pattern of racketeering activity.

330.    Plaintiffs and Class Members are "person[s] injured in his or her business or property" by reason of Defendant FanDuel, Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, Bank Defendants, Facilitator Defendants, Processor

Defendants and FanDuel Investor Defendants violation of RICO within the meaning of 18 U.S.C. § 1964(c).

331.     The acts alleged herein occurred on a minimum of three times and on a daily basis.

### Predicate Act—Violation of 18 U.S.C. § 1955

332.     Independently and collectively, the named Defendants in this Count are responsible for the growth of the illegal enterprise to become a multi-billion dollar business by providing legitimacy of what was, in fact, an illegal activity.

333.     The named Defendants all committed a Predicate Act under RICO, violating 18 U.S.C. § 1955, which provides in relevant part:

> (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
> (b) As used in this section--
> (1) "illegal gambling business" means a gambling business which--
> (i) is a violation of the law of a State or political subdivision in which it is conducted;
> (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
> (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
> * * *
> (4) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.
> * * *
>
> (6) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

334.     FanDuel is an illegal gambling business because it meet all three elements of 18 U.S.C. § 1955(b)(1-3),

335.     FanDuel is an "illegal gambling business" within the meaning of 18 U.S.C. §
1955(b)(1), because, as set forth herein, FanDuel's activities violate Florida law. "State" means
any State of the United States. 18 U.S.C. § 1955(b)(6).

336.     Fanduel is an "illegal gambling business" within the meaning of 18 U.S.C. §
1955(b)(2), because FanDuel's business involves five or more persons who conduct, finance,
manage, supervise, direct, or own all or part of the business. Specifically, there are more than
five persons named in this Count that finance (the Investor Defendants), manage, supervise and
direct and own a part of such business (the Investor Defendants and FanDuel).

337.     Fanduel is an "illegal gambling business" within the meaning of 18 U.S.C. §
1955(b)(3),  because it has been or remains in substantially continuous operation since at least
February 1, 2012, for a period in excess of thirty days or has a gross revenue of $2,000 in any
single day.

## The FanDuel RICO Enterprise

338.     The following persons, and others presently unknown, have been members of and
constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to
herein collectively as the FanDuel RICO Enterprise:

(a)     Defendant FanDuel, who: 1) created an illegal gambling enterprise; 2)
knowingly created and conducted illegal gambling activities in violation of Florida law
York in return for payment of significant sums of money; 3) conducted, directed
managed, supervised, directed and owned an illegal gambling business in violation of 18
U.S.C. §1955; 4) knowingly allowed its employees to participate and win fantasy sports
betting games on its own website and Defendant DraftKings website with insider
information, the scope and nature of which they concealed from Plaintiffs and Class

Members; 5) knowingly allowed the Saahil Sud Defendant Class and Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;;

(b)    The Ethan Haskell FanDuel Employee Defendant Class, who: 1) knowingly participated in an illegal internet gambling enterprise and won fantasy sports betting games on their employer and Defendant DraftKings' website with insider information,  the scope and nature of which they concealed from Plaintiffs and Class Members; 2) knowingly participated and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members; 3) knowingly allowed the Saahil Sud Defendant Class and the Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members in return for payment of significant sums of money, the scope and nature of which they concealed from Plaintiffs and Class Members.

(c)    The Matthew Boccio DraftKings Employee Defendant Class, who: 1) knowingly participated in an illegal internet gambling enterprise and won fantasy sports betting games on their employer and Defendant FanDuel's website with insider information,  the scope and nature of which they concealed from Plaintiffs and Class Members; 2) knowingly participated and used elaborate computer programs and

algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members; 3) knowingly allowed the Saahil Sud Defendant Class and the Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members in return for payment of significant sums of money, the scope and nature of which they concealed from Plaintiffs and Class Members.

(d)     The Saahil Sud Defendant Class, who: knowingly participated in an illegal internet gambling enterprise and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members.

(e)     The Drew Dinkmeyer Defendant Class, who: knowingly participated and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members.

(f)     Bank Defendants, who: knowingly participated in illegal internet gambling activities by financing and loaning funds to Plaintiff and Class Members who made bets or wagers on Defendant FanDuel's illegal gaming website and profited therefrom;

(g)  Facilitator Defendants, who: knowingly participated in illegal internet gambling activities by passing through funds through the use of credit cards to Defendant FanDuel, as set forth herein, and profited therefrom;

(h)  Processor Defendants, who: knowingly participated in illegal internet gambling activities by processing credit card payments via the Facilitator Defendants to Defendant FanDuel, as set forth herein, and profited therefrom; and,

(i)  FanDuel Investor Defendants, who: knowingly financed all or part of an illegal gambling operation, specifically Defendant FanDuel's illegal internet gambling operation, in violation of Florida law and 18 U.S.C. §1955. By virtue of financing, promoting and endorsing Defendant FanDuel's illegal internet gambling enterprise to grow and flourish and also provided credibility and legitimacy to the enterprise thereby attracting more unknowing players to participate a customers in the illegal gambling enterprise.

339.  The FanDuel RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose.  The FanDuel RICO Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

340.  While Defendant FanDuel participated in the conduct of the RICO Enterprise, they had an existence separate and distinct from the RICO Enterprise.  Further, the RICO Enterprise was separate and distinct from the pattern of racketeering in which FanDuel engaged.

341.    At all relevant times, Defendant FanDuel operated, controlled or managed the FanDuel through a variety of actions. Defendant FanDuel's participation in the RICO Enterprise was necessary for the successful operation of its scheme to conduct an illegal gambling enterprise, FanDuel controlled and monitored all aspects of fantasy sports betting on its website and concealed the nature and scope of the illegal gambling and of its insider information that was being used and the use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members and profited from such concealment.

342.    The members of the FanDuel RICO Enterprise all served a common purpose: to make as much money as possible on the respective illegal internet gambling fantasy sports betting games as well as to maximize the revenue and profitability of FanDuel and each FanDuel RICO Enterprise member.  The members of the FanDuel RICO Enterprise shared the illegal bounty generated by the enterprise, i.e., by sharing the benefit derived from the profits generated by the scheme to defraud through illegal internet gambling activities.

343.    Each Defendant member of the FanDuel RICO Enterprise benefited from the common purpose: to maximize the amount of user and user fees and bets to increase profits and marketing.

**Pattern of Racketeering Activity**

344.    Defendant FanDuel conducted and participated in the conduct of the affairs of the FanDuel RICO Enterprise through a pattern of illegal internet gambling pursuant to violations of 18 U.S.C. §1955 thereby constituting racketeering activity that has lasted for several years beginning no later than February 2012 and continuing to this day, and that consisted of numerous and repeated violations of 18 U.S.C. §1955, mail and wire fraud statutes, which prohibit the use

of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

345.    For Defendant FanDuel, the purpose of the scheme to violate  18 U.S.C. §1955 was to: 1) gain billions of dollars through the use of illegal internet gambling; 2) conceal the scope and nature of the insider information being used to generate greater winnings to be invested back into FanDuel and to drive up the stakes of each game to attract more users and therefore more user fees and generate revenue and profits; and 3) conceal the scope and nature of allowing "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to have more entries by users paying tens of thousands of dollars to drive up the stakes of each game, to attract more users and therefore more user fees and generate revenue and profits, and to ensure that Apex predator bettors and Shark Predator bettors continued to play, to the detriment of the majority of the players. In fact, only 1.5% of the players, the Apex and Shark betters, made 93% of the money.

346.    By concealing the scope and nature of the insider information Defendant FanDuel also maintained and boosted consumer confidence in the illegal internet gambling enterprise, their brand and fantasy sports betting, all of which furthered the scheme to defraud and helped FanDuel generate more users to play their fantasy sports betting games.

347.    As detailed in this Complaint, Defendant FanDuel was well aware that its enterprise constituted illegal internet gambling by their employees and illegal gambling activities under state laws. Nonetheless, Defendant FanDuel was using insider information while intentionally subjecting Plaintiffs and Class Members to those risks or consciously disregarded those risks in order to maximize their profits at the expense of Plaintiffs and Class Members.

348.    As detailed in this Complaint, Defendant FanDuel was well aware of the use of use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods insider information by their employees, but intentionally subjected Plaintiffs and Class Members to those risks or consciously disregarded those risks in order to maximize their profits.

349.    To carry out, or attempt to carry out the scheme to defraud, Defendant FanDuel conducted or participated in the conduct of the affairs of FanDuel Enterprise through the following pattern of racketeering activity that violated 18 U.S.C. § 1955 and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

(a)    Defendant FanDuel devised and furthered the scheme to defraud by use of the mail, telephone, and internet, and transmitted, or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, user fees and illegal gambling proceeds, writing(s) and/or signal(s), including their respective websites, statements to the press, and communications with other members of the FanDuel RICO Enterprise, as well as the user fees and transactional costs of the illegal internet gambling activities, advertisements and other communications to the Plaintiffs and Class Members; and

(b)    Defendant FanDuel utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described herein.

350.    Defendant FanDuel's pattern of racketeering activity in violation of 18 U.S.C. § 1955 and the use of the mail and wire fraud statutes included but was not limited to the following:

(a)     Knowingly conducting illegal gambling activities that violated Florida law and thereby also violating 18 U.S.C. §1955, a RICO predicate act;

(b)     Fraudulently concealing the use of insider information by their employees and permitting the use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other unfair methods by their employees as well as by the Apex predator and Shark Predator bettors. By transmitting, causing to be transmitted, by means of mail and wire communication and the internet, by travelling in interstate or foreign commerce, between their offices in Orlando, Florida, the state of New York and various other locations across the United States, communications concealing the nature of their fraudulent scheme on their betting websites on a nationwide basis.

351.    Defendant FanDuel's conduct in furtherance of this illegal activity and gaming was intentional.  Plaintiffs and Class members were directly harmed as a result of the Defendant FanDuel's intentional conduct.  Plaintiffs and Class members, and federal regulators, among others, relied on Defendant FanDuel's material misrepresentations and omissions of fact.

352.    As described throughout this Complaint, Defendant FanDuel engaged in a pattern of related and continuous predicate acts since at least March 2012. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding Plaintiffs and other Class members and obtaining significant monies and revenues from them while providing a fraudulent and illegal betting website rampant with insider information and unfair advantages to DraftKings and FanDuel Defendants' employees and Apex predators and Sharks. The predicate acts also had the same or similar results, participants, victims, and methods of commission.  The predicate acts were related and not isolated events.

353.    The predicate acts all had the purpose of generating significant revenue and profits for the Defendant FanDuel at the expense of Plaintiff and Class members.  The predicate acts were committed or caused to be committed by Defendant FanDuel through its participation in the  FanDuel RICO Enterprise and in furtherance of its fraudulent scheme, and were interrelated in that they involved in illegally obtaining Plaintiff's and Class Members' entry fees and wagers.

354.    By reason of and as a result of the conduct of Defendant FanDuel, and in particular, its pattern of racketeering activity, Plaintiff and Class members have been injured in their business and/or property in multiple ways, including but not limited to the loss of their user fees and wagers on fantasy sports.

355.    Defendant FanDuel's and all "association in fact enterprise" referred to in paragraphs 340(a-i) violations of 18 U.S.C. § 1955 and 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiff and Class Members in the form of their loses while betting on Defendant's illegal internet gambling site. Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demand:

    a.   certification of the proposed Plaintiffs' Class and Defendant Class;

    b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

    c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Class;

d.  appointment of Ethan Haskell and Matthew Boccio as the representatives for their respective Defendant Classes;

e.  appointment of Mr. Sud and Mr. Dinkmeyer as the representatives for their respective Defendant Classes;

f.  compensatory damages based on the amount lost by the Plaintiff and Class in playing Defendant's illegal internet gambling games;

g.  treble damages;

h.  pre and post-judgment interest;

i.  an award of taxable costs; and,

j.  any and all such further relief as this Court deems just and proper.

**COUNT 11-- VIOLATION OF 18 U.S.C. § 1962(C), THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO") BY PLAINTIFF ROSEN AS TO DEFENDANT DRAFTKINGS, THE ETHAN HASKELL FANDUEL EMPLOYEE DEFENDANT CLASS, THE MATTHEW BOCCIO DRAFTKINGS EMPLOYEE DEFENDANT CLASS, SAAHIL SUD DEFENDANT CLASS, DREW DINKMEYER DEFENDANT CLASS, BANK DEFENDANTS, FACILITATOR DEFENDANTS, PROCESSOR DEFENDANTS AND DRAFTKINGS INVESTOR DEFENDANTS**

356.    Plaintiff Rosen adopts and restate paragraphs 2, 6-202 and 204-229, as if fully set forth herein.

357.    Independently and collectively, the named Defendants in this Count are responsible for the growth of the illegal internet gambling enterprise to become a multi-billion dollar business by providing legitimacy and funding for what is, in fact, an illegal activity.

358.    Defendant DraftKings was the ringleader of the illegal gambling enterprise, as set forth herein.

359.    Defendant DraftKings Investors pumped millions of dollars into Defendant DraftKings providing legitimacy to the illegal gambling that was occurring and allowing Defendant DraftKings to conduct unprecedented advertising to attract more bettors.

360.    The Bank Defendants, Facilitator Defendants and Processor Defendants all profited from the chain of money going from the unsuspecting Plaintiff and Class Members via the Bank Defendants, Facilitator Defendants and Processor Defendants.

361.    The Shark and Apex bettors all profited from the unsuspecting Plaintiff and Class Members bets via the illegal internet gambling by taking advantage of their advanced programs to cheat Plaintiff and Class Members.

362.    The employees of FanDuel and DraftKings also profited from unsuspecting Plaintiff and Class Members by using insider information to their advantage.

363.    DraftKings is a "person" under 18 U.S.C. § 1961(3).

364.    DraftKings' illegal gambling business involves five or more persons who conduct, finance, manage, supervise direct or own all or part of DraftKings, within the meaning of 18 U.S.C. §1955.

365.    The Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings' Employee Defendant Class, Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and DraftKings Investor Defendants are all "persons" under 18 U.S.C. § 1961(3).

366.    All Defendants named in this count violated 18 U.S.C § 1962(c) by participating in or conducting the affairs of the DraftKings RICO Enterprise through a pattern of racketeering activity.

367.    Plaintiffs and Class Members are "person[s] injured in his or her business or property" by reason of Defendant DraftKings, Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, Bank Defendants, Facilitator Defendants, Processor

Defendants and DraftKings Investor Defendants violation of RICO within the meaning of 18 U.S.C. § 1964(c).

368.    The acts alleged herein occurred on a minimum of three times and on a daily basis.

### Predicate Act—Violation of 18 U.S.C. § 1955

369.    The named Defendants all committed a Predicate Act under RICO, violating 18 U.S.C. § 1955, which provides in relevant part:

> (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined under this title or imprisoned not more than five years, or both.
> (b) As used in this section--
> (1) "illegal gambling business" means a gambling business which--
> (i) is a violation of the law of a State or political subdivision in which it is conducted;
> (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and
> (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.
>            * * *
> (4) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.
>            * * *
>
> (6) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

370.    DraftKings is an illegal gambling business because it meet all three elements of 18 U.S.C. § 1955(b)(1-3),

371.    DraftKings is an "illegal gambling business" within the meaning of 18 U.S.C. § 1955(b)(1), because, as set forth herein, DraftKings' activities violate Florida law. "State" means any State of the United States. 18 U.S.C. § 1955(b)(6).

372.    DraftKings is an "illegal gambling business" within the meaning of 18 U.S.C. § 1955(b)(2), because DraftKings' business involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of the business. Specifically, there are more than five persons named in this Count that finance (the Investor Defendants), manage, supervise and direct and own a part of such business (the Investor Defendants and DraftKings).

373.    DraftKings is an "illegal gambling business" within the meaning of 18 U.S.C. § 1955(b)(3),  because it has been or remains in substantially continuous operation since at least February 1, 2012, for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

## The DraftKings RICO Enterprise

374.    The following persons, and others presently unknown, have been members of and constitute an "association-in-fact enterprise" within the meaning of RICO, and will be referred to herein collectively as the DraftKings RICO Enterprise:

(a)    Defendant DraftKings, who: 1) created an illegal gambling enterprise; 2) knowingly created and conducted illegal gambling activities in violation of Florida law in return for payment of significant sums of money; 3) conducted, directed managed, supervised, directed and owned an illegal gambling business in violation of 18 U.S.C. §1955; 4) knowingly allowed its employees to participate and win fantasy sports betting games on its own website and Defendant DraftKings website with insider information, the scope and nature of which they concealed from Plaintiffs and Class Members; 5) knowingly allowed the Saahil Sud Defendant Class and Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders,"

"scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members;;

(b)     The Ethan Haskell FanDuel Employee Defendant Class, who: 1) knowingly participated in an illegal internet gambling enterprise and won fantasy sports betting games on their employer and Defendant DraftKings' website with insider information,  the scope and nature of which they concealed from Plaintiffs and Class Members; 2) knowingly participated and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members; 3) knowingly allowed the Saahil Sud Defendant Class and the Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members in return for payment of significant sums of money, the scope and nature of which they concealed from Plaintiffs and Class Members.

(c)     The Matthew Boccio DraftKings Employee Defendant Class, who: 1) knowingly participated in an illegal internet gambling enterprise and won fantasy sports betting games on their employer and Defendant FanDuel's website with insider information,  the scope and nature of which they concealed from Plaintiffs and Class Members; 2) knowingly participated and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the

scope and nature of which they concealed from Plaintiffs and Class Members; 3) knowingly allowed the Saahil Sud Defendant Class and the Drew Dinkmeyer Defendant Class to use elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members in return for payment of significant sums of money, the scope and nature of which they concealed from Plaintiffs and Class Members.

(d)     The Saahil Sud Defendant Class, who: knowingly participated in an illegal internet gambling enterprise and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members.

(e)     The Drew Dinkmeyer Defendant Class, who: knowingly participated and used elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members, the scope and nature of which they concealed from Plaintiffs and Class Members.

(f)     Bank Defendants, who: knowingly participated in illegal internet gambling activities by financing and loaning funds to Plaintiff and Class Members who made bets or wagers on Defendant DraftKings' illegal gaming website and profited therefrom;

(g)     <u>Facilitator Defendants</u>, who: knowingly participated in illegal internet gambling activities by passing through funds through the use of credit cards to Defendant DraftKings, as set forth herein, and profited therefrom;

(h)     <u>Processor Defendants</u>, who: knowingly participated in illegal internet gambling activities by processing credit card payments via the Facilitator Defendants to Defendant DraftKings, as set forth herein, and profited therefrom; and,

(i)     <u>DraftKings Investor Defendants</u>, who: knowingly financed all or part of an illegal gambling operation, specifically Defendant DraftKings' illegal internet gambling operation, in violation of Florida law and thereby 18 U.S.C. §1955. By virtue of financing, promoting and endorsing Defendant DraftKings' illegal internet gambling enterprise to grow and flourish and also provided credibility and legitimacy to the enterprise thereby attracting more unknowing players to participate a customers in the illegal gambling enterprise.

375.    The DraftKings RICO Enterprise, which engaged in, and whose activities affected interstate and foreign commerce, is an association-in-fact of individuals and corporate entities within the meaning of 18 U.S.C. § 1961(4) and consists of "persons" associated together for a common purpose.  The DraftKings RICO Enterprise had an ongoing organization with an ascertainable structure, and functioned as a continuing unit with separate roles and responsibilities.

376.    While Defendant DraftKings participated in the conduct of the RICO Enterprise, they had an existence separate and distinct from the RICO Enterprise.  Further, the RICO Enterprise was separate and distinct from the pattern of racketeering in which DraftKings engaged.

377.    At all relevant times, Defendant DraftKings operated, controlled or managed DraftKings through a variety of actions. Defendant DraftKings' participation in the RICO Enterprise was necessary for the successful operation of its scheme to conduct an illegal gambling enterprise, DraftKings controlled and monitored all aspects of fantasy sports betting on its website and concealed the nature and scope of the illegal gambling and of its insider information that was being used and the use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Class Representatives and Class Members and profited from such concealment.

378.    The members of the DraftKings RICO Enterprise all served a common purpose: to make as much money as possible on the respective illegal internet gambling fantasy sports betting games as well as to maximize the revenue and profitability of DraftKings and each DraftKings RICO Enterprise member.  The members of the DraftKings RICO Enterprise shared the illegal bounty generated by the enterprise, i.e., by sharing the benefit derived from the profits generated by the scheme to defraud through illegal internet gambling activities.

379.    Each Defendant member of the DraftKings RICO Enterprise benefited from the common purpose: to maximize the amount of user and user fees and bets to increase profits and marketing.

**Pattern of Racketeering Activity**

380.    Defendant DraftKings conducted and participated in the conduct of the affairs of the DraftKings RICO Enterprise through a pattern of illegal internet gambling pursuant to violations of 18 U.S.C. §1955 thereby constituting racketeering activity that has lasted for several years beginning no later than February 2012 and continuing to this day, and that consisted of numerous and repeated violations of 18 U.S.C. §1955, mail and wire fraud statutes,

which prohibit the use of any interstate or foreign mail or wire facility for the purpose of executing a scheme to defraud, in violation of 18 U.S.C. §§ 1341 and 1343.

381.   For Defendant DraftKings, the purpose of the scheme to violate  18 U.S.C. §1955 was to: 1) gain billions of dollars through the use of illegal internet gambling; 2) conceal the scope and nature of the insider information being used to generate greater winnings to be invested back into DraftKings and to drive up the stakes of each game to attract more users and therefore more user fees and generate revenue and profits; and 3) conceal the scope and nature of allowing "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to have more entries by users paying tens of thousands of dollars to drive up the stakes of each game, to attract more users and therefore more user fees and generate revenue and profits, and to ensure that Apex predator bettors and Shark Predator bettors continued to play, to the detriment of the majority of the players. In fact, only 1.5% of the players, the Apex and Shark betters, made 93% of the money.

382.   By concealing the scope and nature of the insider information Defendant DraftKings also maintained and boosted consumer confidence in the illegal internet gambling enterprise, their brand and fantasy sports betting, all of which furthered the scheme to defraud and helped DraftKings generate more users to play their fantasy sports betting games.

383.   As detailed in this Complaint, Defendant DraftKings was well aware that its enterprise constituted illegal internet gambling by their employees and illegal gambling activities under state laws. Nonetheless, Defendant DraftKings was using insider information while intentionally subjecting Plaintiffs and Class Members to those risks or consciously disregarded those risks in order to maximize their profits at the expense of Plaintiffs and Class Members.

384.    As detailed in this Complaint, Defendant DraftKings was well aware of the use of use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods insider information by their employees, but intentionally subjected Plaintiffs and Class Members to those risks or consciously disregarded those risks in order to maximize their profits.

385.    To carry out, or attempt to carry out the scheme to defraud, Defendant DraftKings conducted or participated in the conduct of the affairs of DraftKings Enterprise through the following pattern of racketeering activity that violated 18 U.S.C. § 1955 and employed the use of the mail and wire facilities, in violation of 18 U.S.C. § 1341 (mail fraud) and § 1343 (wire fraud):

(a)    Defendant DraftKings devised and furthered the scheme to defraud by use of the mail, telephone, and internet, and transmitted, or caused to be transmitted, by means of mail and wire communication travelling in interstate or foreign commerce, user fees and illegal gambling proceeds, writing(s) and/or signal(s), including their respective websites, statements to the press, and communications with other members of the DraftKings RICO Enterprise, as well as the user fees and transactional costs of the illegal internet gambling activities, advertisements and other communications to the Plaintiffs and Class Members; and

(b)    Defendant DraftKings utilized the interstate and international mail and wires for the purpose of obtaining money or property by means of the omissions, false pretense, and misrepresentations described herein.

386.    Defendant DraftKings' pattern of racketeering activity in violation of 18 U.S.C. § 1955 and the use of the mail and wire fraud statutes included but was not limited to the following:

(a)      Knowingly conducting illegal gambling activities that violated Florida law and thereby also violating 18 U.S.C. §1955, a RICO predicate act;

(b)      Fraudulently concealing the use of insider information by their employees and permitting the use of "robots," "spiders," "scrapers," "sniping software," "scripts" and other unfair methods by their employees as well as by the Apex predator and Shark Predator bettors. By transmitting, causing to be transmitted, by means of mail and wire communication and the internet, by travelling in interstate or foreign commerce, between their offices in Boston, New York and various other locations across the United States, communications concealing the nature of their fraudulent scheme on their betting websites on a nationwide basis.

387.    Defendant DraftKings' conduct in furtherance of this illegal activity and gaming was intentional.  Plaintiffs and Class members were directly harmed as a result of the Defendant DraftKings' intentional conduct.  Plaintiffs and Class members, and federal regulators, among others, relied on Defendant DraftKings' material misrepresentations and omissions of fact.

388.    As described throughout this Complaint, Defendant DraftKings engaged in a pattern of related and continuous predicate acts since at least March 2012. The predicate acts constituted a variety of unlawful activities, each conducted with the common purpose of defrauding Plaintiffs and other Class members and obtaining significant monies and revenues from them while providing a fraudulent and illegal betting website rampant with insider information and unfair advantages to DraftKings and FanDuel Defendants' employees and Apex predators and Sharks. The predicate acts also had the same or similar results, participants, victims, and methods of commission.  The predicate acts were related and not isolated events.

389.   The predicate acts all had the purpose of generating significant revenue and profits for Defendant DraftKings at the expense of Plaintiff and Class members.  The predicate acts were committed or caused to be committed by Defendant DraftKings through its participation in the  DraftKings RICO Enterprise and in furtherance of its fraudulent scheme, and were interrelated in that they involved in illegally obtaining Plaintiff's and Class Members' entry fees and wagers.

390.   By reason of and as a result of the conduct of Defendant DraftKings, and in particular, its pattern of racketeering activity, Plaintiff and Class members have been injured in their business and/or property in multiple ways, including but not limited to the loss of their user fees and wagers on fantasy sports.

391.   Defendant DraftKings and the "other-in-fact enterprise" Defendants referred to in paragraph 379(a-i) violations of 18 U.S.C. § 1955 and 18 U.S.C. § 1962(c) have directly and proximately caused injuries and damages to Plaintiff and Class Members in the form of their loses while betting on Defendant's illegal internet gambling site. Plaintiffs and Class Members are entitled to bring this action for three times their actual damages, as well as injunctive/equitable relief and costs and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demand:

    a.   certification of the proposed Plaintiffs' Class and Defendant Class;

    b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

    c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Class;

    d.   appointment of Ethan Haskell and Matthew Boccio as the representatives for their respective Defendant Classes;

    e.   appointment of Mr. Sud and Mr. Dinkmeyer as the representatives for their respective Defendant Classes;

    f.   compensatory damages based on the amount lost by the Plaintiff and Class in playing Defendant's illegal internet gambling games;

    g.   treble damages;

    h.   pre and post-judgment interest;

    i.   an award of taxable costs; and,

    j.   any and all such further relief as this Court deems just and proper.

**COUNT 12—CIVIL CONSPIRACY BY PLAINTIFF WAX AS TO DEFENDANT FANDUEL, THE ETHAN HASKELL FANDUEL EMPLOYEE DEFENDANT CLASS, THE MATTHEW BOCCIO DRAFTKINGS EMPLOYEE DEFENDANT CLASS, SAAHIL SUD DEFENDANT CLASS, DREW DINKMEYER DEFENDANT CLASS, BANK DEFENDANTS, FACILITATOR DEFENDANTS, PROCESSOR DEFENDANTS AND FANDUEL INVESTOR DEFENDANTS**

392.   Plaintiff Wax adopts and restates paragraphs 1, 3-5, 9-203 and 205-229, as if fully set forth herein.

393.   An agreement between two or more parties, Defendant FanDuel, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and the FanDuel Investor Defendants, under the control of Defendant FanDuel and with the assistance and agreement of the Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and the FanDuel Investor Defendants existed whereby the parties agreed to perform an unlawful act, to wit: conduct illegal internet gambling activities in

violation of state and federal law, to take Plaintiff and Class Members money, and defrauding the Plaintiff and Class Members in this matter through the use of insider information and elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff and Class Members as set forth herein.

394.    Defendant FanDuel created and directed and supervised the illegal internet gambling scheme.

395.    Independently and collectively, the named Defendants in this Count are responsible for the growth of the illegal internet gambling enterprise to become a multi-billion dollar business by providing legitimacy and funding for what is, in fact, an illegal activity.

396.    Defendant FanDuel was the ringleader of the illegal gambling enterprise, as set forth herein.

397.    Defendant FanDuel Investors pumped millions of dollars into Defendant FanDuel providing legitimacy to the illegal gambling that was occurring and allowing Defendant FanDuel to conduct unprecedented advertising to attract more bettors.

398.    Ethan Haskell FanDuel Employee Defendant Class used insider information to profit from Plaintiff and Class Members.

399.    Matthew Boccio DraftKings Employee Defendant Class used insider information to profit from Plaintiff and Class Members.

400.    The Saahil Sud Defendant Class used the complex "bots," "spiders" and complex computer algorithms to profit from Plaintiff and Class Members.

401.    The Drew Dinkmeyer Defendant Class used the complex "bots," "spiders" and complex computer algorithms to profit from Plaintiff and Class Members.

402.     The Bank Defendants provided loans to Plaintiff and Class Members to play on the illegal internet gambling website and profited Plaintiff and Class Members use of the Bank Defendant's funding for bets.

403.     The Facilitator Defendants provided credit to Plaintiff and Class Members to play on the illegal internet gambling website and profited Plaintiff and Class Members use of the Facilitator Defendant's credit cards for funding bets.

404.     The Processor Defendants provided benefitted from processing Plaintiff and Class Members' transactions to play on the illegal internet gambling website and profited from transaction fees that were collected for funding bets.

405.     The FanDuel Investor Defendants provided ready capital for Defendant FanDuel to grow their website, engage in a massive advertising campaign to attract more users, user fees and bets, to grow the size of the illegal gambling pots, and ultimately provide legitimacy to the illegal internet gambling website.

406.     Together, all Defendants named in this Count allowed the illegal internet gambling enterprise to thrive and grow into a billion dollar enterprise and gain legitimacy at the expense of Plaintiff and Class Members.

407.     Defendant FanDuel, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and the FanDuel Investor Defendants overtly acted in pursuance of the conspiracy, as set forth herein, and did in fact defraud the Plaintiffs and Class Members in this matter via their acts and omissions, as set forth herein.

408.    As a direct and proximate cause of the conspiratorial acts of Defendants FanDuel, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, the Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and the FanDuel Investor Defendants, Plaintiffs and Class Members have incurred economic damages in the form of their losses while betting on Defendants illegal internet gambling enterprise and are entitled to recover economic damages.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demand:

    a.   certification of the proposed Plaintiffs' Class and Defendant Classes;

    b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

    c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Class;

    d.   appointment of Ethan Haskell and Matthew Boccio as the representatives for their respective Defendant Classes;

    e.   appointment of Mr. Sud and Mr. Dinkmeyer as the representatives for their respective Defendant Classes;

    f.   compensatory damages;

    g.   pre and post-judgment interest;

    h.   an award of taxable costs; and,

    i.   any and all such further relief as this Court deems just and proper.

**COUNT 13—CIVIL CONSPIRACY BY PLAINTIFF ROSEN AS TO DEFENDANT DRAFTKINGS, THE ETHAN HASKELL FANDUEL EMPLOYEE DEFENDANT CLASS, THE MATTHEW BOCCIO DRAFTKINGS EMPLOYEE DEFENDANT CLASS, SAAHIL SUD DEFENDANT CLASS, DREW DINKMEYER DEFENDANT CLASS, BANK DEFENDANTS, FACILITATOR DEFENDANTS, PROCESSOR DEFENDANTS AND DRAFTKINGS INVESTOR DEFENDANTS**

409.     Plaintiff Rosen adopts and restate paragraphs 2, 6-202 and 204-229 as if fully set forth herein.

410.     An agreement between two or more parties, Defendant DraftKings, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and the DraftKings Investor Defendants, under the control of Defendant DraftKings and with the assistance and agreement of the Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and the DraftKings Investor Defendants existed whereby the parties agreed to perform an unlawful act, to wit: conduct illegal internet gambling activities in violation of state and federal law, to take Plaintiff and Class Members money, and defrauding the Plaintiff and Class Members in this matter through the use of insider information and elaborate computer programs and algorithms called "robots," "spiders," "scrapers," "sniping software," "scripts" and other methods to gain an unfair advantage over Plaintiff and Class Members as set forth herein.

411.     Defendant DraftKings created and directed and supervised the illegal internet gambling scheme.

412. Independently and collectively, the named Defendants in this Count are responsible for the growth of the illegal internet gambling enterprise to become a multi-billion dollar business by providing legitimacy and funding for what is, in fact, an illegal activity.

413. Defendant DraftKings was the ringleader of the illegal gambling enterprise, as set forth herein.

414. Defendant DraftKings Investors pumped millions of dollars into Defendant DraftKings providing legitimacy to the illegal gambling that was occurring and allowing Defendant DraftKings to conduct unprecedented advertising to attract more bettors.

415. Ethan Haskell FanDuel Employee Defendant Class used insider information to profit from Plaintiff and Class Members.

416. Matthew Boccio DraftKings Employee Defendant Class used insider information to profit from Plaintiff and Class Members.

417. The Saahil Sud Defendant Class used the complex "bots," "spiders" and complex computer algorithms to profit from Plaintiff and Class Members.

418. The Drew Dinkmeyer Defendant Class used the complex "bots," "spiders" and complex computer algorithms to profit from Plaintiff and Class Members.

419. The Bank Defendants provided loans to Plaintiff and Class Members to play on the illegal internet gambling website and profited Plaintiff and Class Members use of the Bank Defendant's funding for bets.

420. The Facilitator Defendants provided credit to Plaintiff and Class Members to play on the illegal internet gambling website and profited Plaintiff and Class Members use of the Facilitator Defendant's credit cards for funding bets.

421.    The Processor Defendants provided benefitted from processing Plaintiff and Class Members' transactions to play on the illegal internet gambling website and profited from transaction fees that were collected for funding bets.

422.    The DraftKings Investor Defendants provided ready capital for Defendant DraftKings to grow their website, engage in a massive advertising campaign to attract more users, user fees and bets, to grow the size of the illegal gambling pots, and ultimately provide legitimacy to the illegal internet gambling website.

423.    Together, all Defendants named in this Count allowed the illegal internet gambling enterprise to thrive and grow into a billion dollar enterprise and gain legitimacy at the expense of Plaintiff and Class Members.

424.    Defendant DraftKings, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and the DraftKings Investor Defendants overtly acted in pursuance of the conspiracy, as set forth herein, and did in fact defraud the Plaintiffs and Class Members in this matter via their acts and omissions, as set forth herein.

425.    As a direct and proximate cause of the conspiratorial acts of Defendants DraftKings, Ethan Haskell FanDuel Employee Defendant Class, Matthew Boccio DraftKings Employee Defendant Class, the Saahil Sud Defendant Class, the Drew Dinkmeyer Defendant Class, Bank Defendants, Facilitator Defendants, Processor Defendants and the DraftKings Investor Defendants, Plaintiffs and Class Members have incurred economic damages in the form of their losses while betting on Defendants illegal internet gambling enterprise and are entitled to recover economic damages.

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiffs' Class and Defendant Classes;

b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Class;

d.   appointment of Ethan Haskell and Matthew Boccio as the representatives for their respective Defendant Classes;

e.   appointment of Mr. Sud and Mr. Dinkmeyer as the representatives for their respective Defendant Classes;

f.   compensatory damages;

g.   pre and post-judgment interest;

h.   an award of taxable costs; and,

i.   any and all such further relief as this Court deems just and proper.

## COUNT 14—NEGLIGENCE AS TO DEFENDANT NATIONAL BASKETBALL ASSOCIATION, INC.

426.    Plaintiff Wax adopts and restates paragraphs 1, 52-53 and 122-209, as if fully set forth herein.

427.    Defendant National Basketball Association, Inc. ("NBA") the largest, most famous and most profitable professional basketball league in the world.

428.    Defendant NBA carries with it the imprimatur of legitimacy from its operation of a successful, profitable and enjoyable brand of basketball. The NBA's brand, teams, players and owners are each famous in their own right are viewed by the public as a legitimate and well respected organization.

429.    By way of example, the NBA recently held itself out as an entity that staunchly rejects betting on its games when former NBA official Tim Donaghy resigned from his job an

NBA official, eventually pleading guilty to having bet on NBA games after an FBI investigation. Despite Mr. Donaghy's troubles and press coverage, the NBA has grown and continues to thrive demonstrating that the public, Plaintiffs and Class Members that ventures affiliated with the NBA are legitimate and legal.

430.    The NBA has gone so far to legitimize FanDuel by having one of its employees, the NBA President of Global Operations, Mr. Sal LaRocca serve on FanDuel's Board of Directors and become an official partner of FanDuel, launching the first "Official One-Day Fantasy Basketball game of the NBA."

431.    Defendant NBA's duty to Plaintiffs and Class Members included, but was not limited to the following:

> (a)    to act reasonably and with due care in not legitimizing the illegal gambling that is intimately tied with the performance of its athletes participating in NBA games;

> (b)    adequately warning Plaintiffs and Class Members that FanDuel's fantasy sports games were illegal gambling under state and federal law;

> (c)    not allowing FanDuel to attempt to legitimize its illegal operations utilizing images of players in NBA games to induce Plaintiffs and Class Members to place more bets and wagers; and,

> (d)    otherwise exercising reasonable care to prevent Defendant's good public image from legitimizing and promoting illegal gambling.

432.    Defendant NBA's breaches of its duty to Plaintiffs and Class Members included, but was not limited to the following:

(a)     failing to act reasonably and with due care by legitimizing the illegal gambling that is intimately tied with the performance of athletes participating in NBA games;

(b)     failing to adequately warn Plaintiffs and Class Members that  FanDuel's fantasy sports games were illegal gambling under state and federal law;

(c)     allowing FanDuel to attempt to legitimize its illegal operations utilizing images of players in NBA games to induce Plaintiffs and Class Members to place more bets and wagers; and,

(d)     failing to otherwise exercising reasonable care to allow Defendant's good public image from legitimizing and promoting illegal gambling.

433.   Defendant knew or should have known that the Plaintiff and Class Members would rely on Defendant's endorsements of the illegal internet gambling enterprise created by Defendant DraftKings and Defendant knew or should have known that its wrongful acts and omissions would cause serious economic injury to Plaintiff Class Representatives and Class Members.

434.   Defendant's conduct has directly and proximately caused economic damages to Plaintiff Class Representatives and Class Members.

435.   As a direct and proximate cause of Defendant's acts and omissions, Plaintiff and Class Members have incurred economic damages in the form of their user fees and wagers they placed on FanDuel's illegal internet gambling fantasy sports betting games.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiffs' Class and Defendant Class;

     b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

     c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Class;

     d.   appointment of Ethan Haskell as the representative of the Defendant Class;

     e.   compensatory damages;

     f.   pre and post-judgment interest;

     g.   an award of taxable costs; and,

     h.   any and all such further relief as this Court deems just and proper.

## COUNT 15—NEGLIGENCE AS TO DEFENDANTS MAJOR LEAGUE BASEBALL VENTURES, MAJOR LEAGUE SOCCER LLC, NHL ENTERPRISES, INC. AND NHL ENTERPRISES LP

436.    Plaintiff Rosen adopts and restates paragraphs 2, 107-110, 113-114 and 122-209 as if fully set forth herein.

437.    Defendants Major League Baseball Ventures, Major League Soccer LLC, NHL Enterprises LLC, NHL Enterprises, Inc., and NHL Enterprises LP are all arms of major league sports in the United States: Major League Baseball, Major League Soccer and the National Hockey League.

438.    Defendants Major League Baseball Ventures, Major League Soccer LLC, NHL Enterprises LLC, NHL Enterprises, Inc., and NHL Enterprises LP all carry with them the imprimatur of legitimacy from their respective professional sports: baseball, soccer and hockey.

439.    By way of example, Major League Baseball has always held itself out as an entity that staunchly rejects betting on its games. Pete Rose has received a lifetime ban from Major League Baseball for allegedly betting on baseball—actions that leave the public, Plaintiffs and

Class Members that ventures affiliated with Major League Baseball, soccer, hockey and the like are legitimate and legal.

440.     Defendants Major League Baseball Ventures, Major League Soccer LLC, NHL Enterprises LLC, NHL Enterprises, Inc., and NHL Enterprises LP's duty to Plaintiffs and Class Members included, but was not limited to the following:

(a)     to act reasonably and with due care in not legitimizing the illegal gambling that is intimately tied with the performance of athletes participating in their respective sports;

(b)     adequately warning Plaintiffs and Class Members that DraftKings' fantasy sports games were illegal gambling under state and federal law;

(c)     not allowing DraftKings to attempt to legitimize its illegal operations utilizing images of players' in the respective sports to induce Plaintiffs and Class Members to place more bets and wagers; and,

(d)     otherwise exercising reasonable care to prevent Defendants' good public image from legitimizing and promoting illegal gambling.

441.     Defendants Major League Baseball Ventures, Major League Soccer LLC, NHL Enterprises LLC, NHL Enterprises, Inc., and NHL Enterprises LP's breaches of their duty to Plaintiffs and Class Members included, but was not limited to the following:

(a)     failing to act reasonably and with due care by legitimizing the illegal gambling that is intimately tied with the performance of athletes participating in their respective sports;

(b)     failing to adequately warn Plaintiffs and Class Members that DraftKings' fantasy sports games were illegal gambling under state and federal law;

(c)      allowing DraftKings to attempt to legitimize its illegal operations utilizing images of players' in the respective sports to induce Plaintiffs and Class Members to place more bets and wagers; and,

(d)      failing to otherwise exercising reasonable care to allow Defendants' good public image from legitimizing and promoting illegal gambling.

442.    Defendants knew or should have known that the Plaintiff and Class Members would rely on Defendants' endorsements of the illegal internet gambling enterprise created by Defendant DraftKings and Defendants knew or should have known that their wrongful acts and omissions would cause serious economic injury to Plaintiff Class Representatives and Class Members.

443.    Defendants' conduct has directly and proximately caused economic damages to Plaintiff Class Representatives and Class Members.

444.    As a direct and proximate cause of Defendants' acts and omissions, Plaintiff and Class Members have incurred economic damages in the form of their user fees and wagers they placed on DraftKings' illegal internet gambling fantasy sports betting games.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demand:

a.   certification of the proposed Plaintiffs' Class and Defendant Class;

b.   appointment of the Plaintiffs as representatives of the Plaintiffs' Class;

c.   appointment of the undersigned counsel as lead counsel for the Plaintiffs' Class;

d.   appointment of Ethan Haskell as the representative of the Defendant Class;

e.   compensatory damages;

    f.   pre and post-judgment interest;

    g.   an award of taxable costs; and,

    h.   any and all such further relief as this Court deems just and proper.

## COUNT 16--VIOLATION OF THE FLORIDA DECEPTIVEAND UNFAIR TRADE PRACTICES ACT ON BEHALF OF FLORIDA SUBCLASS AGAINST DEFENDANT FANDUEL

445.    Plaintiff Wax adopts and restates paragraphs 1, 3-5, 9-10, 122-151, 153-178, 198-201, 203 and 205-209, as if fully set forth herein.

446.    This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

447.    Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination."  Plaintiff is a "Consumer" within the meaning of §501.203(7), Florida Statutes.

448.    Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

> [T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

449.    The advertising, soliciting, providing, offering of the fantasy sports wagering service by Defendant to Plaintiff is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

450.    Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

trade or commerce are hereby declared unlawful." The Defendant's acts and omissions as well as its failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to section 501.204, Florida Statutes.

451.   The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiff has suffered actual damage for which she is entitled to relief pursuant to section 501.211(2), Florida Statutes.

452.   As a result of Defendant's conduct in this matter, Plaintiff Class Representative was required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

453.   Plaintiff is entitled to recover reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

454.   As a direct and proximate cause of Defendant's acts and omissions, Plaintiff and Class Members have incurred economic damages in the form of lost user fees and waters and are entitled to recover monetary damages.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

    a.   certification of the proposed Plaintiff's class;

    b.   appointment of the Plaintiff Wax as representatives of the Plaintiff's Class;

    c.   appointment of the undersigned counsel as lead counsel for the Plaintiff's Class;

    d.   actual damages;

e.   pre and post-judgment interest;

f.   an award of taxable costs; and,

g.   any and all such further relief as this Court deems just and proper.

## COUNT 17-VIOLATION OF THE FLORIDA DECEPTIVEAND UNFAIR TRADE PRACTICES ACT ON BEHALF OF FLORIDA SUBCLASS AGAINST DEFENDANT DRAFTKINGS

455.   Plaintiff Rosen adopts and restates paragraphs 2, 6-10, 122-152, 154-178, 198-200, 202 and 204-209, as if fully set forth herein.

456.   This is an action for relief under section 501.201, *et.seq.,* Florida Statutes (The Florida Deceptive and Unfair Trade Practices Act).

457.   Section 501.203(7), Florida Statutes defines "Consumer" as "an individual; child, by and through its parent or legal guardian; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; or any other group or combination."  Plaintiff is a "Consumer" within the meaning of §501.203(7), Florida Statutes.

458.   Section 501.203(8), Florida Statutes defines "Trade or Commerce" as:

[T]he advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated. "Trade or Commerce" shall include the conduct of any trade or commerce, however denominated, including any nonprofit or not-for-profit person or activity.

459.   The advertising, soliciting, providing, offering of the fantasy sports wagering service by Defendant to Plaintiff is "Trade or Commerce" within the meaning of section 501.203(8), Florida Statutes.

460.   Section 501.204(1) provides that: "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any

trade or commerce are hereby declared unlawful." The Defendant's acts and omissions as well as its failure to use reasonable care in this matter as alleged in this Complaint equals unconscionable acts or practices, as well as deceptive and unfair acts or practices in the conduct of Defendant's trade or commerce pursuant to section 501.204, Florida Statutes.

461.     The unconscionable, illegal, unfair and deceptive acts and practices of Defendant violate the provisions of Florida's Deceptive and Unfair Trade Practices Act. Plaintiff has suffered actual damage for which she is entitled to relief pursuant to section 501.211(2), Florida Statutes.

462.     As a result of Defendant's conduct in this matter, Plaintiff Class Representative was required to retain, and will be required to pay, for the services of undersigned counsel and their firms.

463.     Plaintiff is entitled to recover reasonable attorneys' fees pursuant to section 501.2105, Florida Statutes upon prevailing in this matter.

464.     As a direct and proximate cause of Defendant's acts and omissions, Plaintiff and Class Members have incurred economic damages in the form of lost user fees and waters and are entitled to recover monetary damages.

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, hereby demands:

      a.  certification of the proposed Plaintiff's class;

      b.  appointment of the Plaintiff Rosen as representatives of the Plaintiff's Class;

      c.  appointment of the undersigned counsel as lead counsel for the Plaintiff's Class;

      d.  actual damages;

e.  pre and post-judgment interest;

f.  an award of taxable costs; and,

g.  any and all such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all applicable claims as a matter of right.

Dated: December 2, 2015

Respectfully submitted,

CHRISTOS LAGOS, Esq.
Florida Bar No. 149690
Lagos@attainjustice.com
JOHN PRIOVOLOS, Esq.
Florida Bar No. 690112
john@priolaw.com
LAGOS & PRIOVOLOS PLLC
66 West Flagler Street
Suite 1000
Miami, FL 33130
Tel: (305) 960-1990
Fax: (305) 891-2610
*Counsel for Plaintiffs*

-AND-

COLSON HICKS EIDSON COLSON
MATTHEWS MARTINEZ GONZALEZ
KALBAC & KANE
*Counsel for Plaintiffs*
255 Alhambra Circle
Penthouse
Coral Gables, Florida 33134
(305) 476-7400; fax (305) 476-7444

By: s/Ervin A. Gonzalez
ERVIN A GONZALEZ
Florida Bar No. 500720
Ervin@colson.com
PATRICK S. MONTOYA
Florida Bar No. 524441
Patrick@colson.com